## SUPERIOR COURT.

GEORGE S. ST. JOHN agt. THE MAYOR, ALDERMEN and COM-
MONALTY of the city of New-York.

The plaintiff brought his action against the defendants to recover damages for
the obstruction of his premises, and consequent loss of custom, by reason of
the defendants' ordering, directing, or permitting to be built upon and about
the sidewalk and street, adjoining the plaintiff's premises, (which were situated
directly opposite to a *public market*,) divers stalls for the sale of meat, vege-
tables, and other articles usually sold at market, so as to render the street in-
convenient for use, and collect around the plaintiff's premises garbage and
filth, offensive and injurious, &c.

The defendants answered by a general denial of all the plaintiff's allegations.

Upon the trial, the jury were instructed, unqualifiedly in these terms : " The
plaintiff is entitled to recover, and you have only to assess the damages."

*Held*, that under the pleadings the plaintiff was bound, in order to entitle him-
self to such an instruction, to establish by evidence, uncontroverted and ad-
mitting of *no reasonable doubt*, every fact essential to his right to recover.
The case, as disclosed by the evidence, did not warrant any such peremptory
direction.

The evidence showed that the reason for the temporary obstruction of the pas-
sage and sidewalk was the rebuilding of the market. The defendants were the
proper party and fully authorized to cause such rebuilding, and the plaintiff,
with all others similarly situated, were bound to submit to whatever incon-
veniences necessarily resulted from the exercise of such authority—the de-
fendants causing no unnecessary or unreasonable obstruction, or for an un-

reasonable length of time, or suffering any nuisance in the sense of that which is noxious or offensive, beyond what is ordinarily incident to a market-place, when kept in proper order, concerning which there was no proof in the case.

If the plaintiff was entitled to recover at all, he would be entitled to the damages *unnecessarily produced* by the defendants, as before stated; and the *loss of custom* is the proper ground of such recovery, and *evidence* upon that point properly admissible.

*New-York, General Term, Dec.,* 1856.

*Present,* DUER, BOSWORTH *and* WOODRUFF, *Justices.*

MOTION by plaintiff for judgment on a verdict subject to the opinion of the court.

M. V. B. WILCOXSON, *for defendants.*

A. J. WILLARD, *for plaintiff.*

By the court—WOODRUFF, Justice. The complaint herein avers, that the plaintiff is the occupant of certain premises situated upon Catharine slip, in this city, used as a refectory and lodging-house. That the premises are situated directly opposite to a public market, and near to a public ferry, and that the street has been and was a great public thoroughfare. That the prosecution of the plaintiff's business, and the public health and convenience required that the said street should be kept clear and free of and from all permanent obstructions of every kind.

The complaint then proceeds to charge the defendants with having erected, or caused, or permitted, or ordered and directed to be built upon and about the sidewalk and street, adjoining the plaintiff's premises, divers stalls for the sale of meat, vegetables and other articles usually sold at market, amounting to, being and constituting an appropriation of the public street, to the plaintiff's injury, &c. It states the continuance of those stalls, and their use for the purposes aforesaid, by various persons, from June the 29th to September the 25th, 1854.

That the effect was to obstruct the sidewalk, render the street inconvenient for use, collect around the plaintiff's premises garbage and filth, offensive and injurious, &c., and in other ways stated, interfering with, suspending, interrupting and obstruct-

ing the due prosecution of the plaintiff's business by keeping away his patrons and visitors, &c., whereby he lost gains, profits, &c., and is damnified to the amount of two thousand dollars.

The defendants answer by a general denial of all the plaintiff's allegations.

Upon the trial, the jury were instructed, unqualifiedly, in these terms: "The plaintiff is entitled to recover, and you have only to assess the damages."

The defendants having put in issue all the allegations in the plaintiff's complaint, the latter was bound, in order to entitle himself to such an instruction, to establish by evidence, uncontroverted, and admitting of no reasonable doubt, every fact essential to his right to recover. We think the case, as disclosed by the evidence, did not warrant any such peremptory direction.

The evidence showed, without contradiction and without any controversy or question, that the plaintiff's premises were situated on a market-place in the city of New-York, having a passage along the front of the premises and a sidewalk. Whether such passage was ever laid out as a street or highway, or how, or when, was in nowise proved, nor attempted to be proved.

The proper inference from the language of the witnesses is, that this passage was used as a street between the front of the plaintiff's house and the market, and used as such, not only by the plaintiff and his customers, but by passengers to and from the ferry at the foot thereof, at the East River. But whether it was an ancient highway or a street opened as such, or simply an open space appropriated for a market-place, its use as a street being only incidental and subordinate to its use for the main object to which it was appropriated, viz., the purposes of the market, the plaintiff did not show.

The evidence also showed that the reason for the temporary obstruction of this passage and sidewalk was the rebuilding of the market. The defendants were the proper party to cause such rebuilding, and whose duty it was, if the public convenience required it, to rebuild and repair; and from the authority and duty of the defendants to provide, repair, rebuild and su-

perintend the public markets, results the inference that it was done by their authority, when their ordinary agents and officers, the superintendent of streets, &c., and superintendent of markets, and the clerk of the market, are shown to have been acting in the matter.

It is quite clear that, under their charter, the defendants have all needful authority for this purpose, and that the owners of houses and lots upon a market-place, hold in subordination to the right and duty of the defendants to do whatever is necessary for the maintenance of the market, and they must submit to whatever inconveniences necessarily result from the exercise of this authority. The location selected by the present plaintiff has its advantages and its disadvantages. Its contiguity to the market-place, where multitudes resorted daily, rendered it valuable for the purposes of the plaintiff's business. He suffers no wrong if, while he gathers the fruits of this incidental benefit, he also yields to the demands of the public, and realizes the disadvantages of his voluntary location, when the repairs or the rebuilding of the market necessarily interrupt or diminish the gains he ordinarily receives. If the rebuilding of the market required a temporary obstruction of the street or passage in the market-place in front of the plaintiff's premises, for a reasonable time, while the work was in progress, the public and adjacent owners are bound to submit to the inconvenience, for the sake of the greater and paramount welfare of the same public, for whose use the public markets are authorized by law to be built and maintained. (*City Charter*, § 17. Ordinance's read in evidence. *Wilkes* agt. *The Hungerford Market Co.*, 2 *Bing. N. C.* 281.)

This view of the subject would not authorize obstructions which were not reasonable under the circumstances, taking into view the work which was to be done, and the propriety and necessity of providing within the market-place suitable accommodations for the sale of provisions during the progress of the work. Nor would it authorize the defendants themselves to maintain a nuisance, in the sense of that which is noxious or offensive, beyond what is ordinarily incident to a market-place

when kept in proper order and condition for market purposes. Nor would it authorize the continuance of such an obstruction for an unreasonable time.

But it may be added that there is nothing in the proofs in the case which shows that the market-place in question was not so established, and of such a character that the defendants may not appropriate the whole place set apart as a market-place, to use as such, by the erection of stalls or market buildings thereon, if, in the exercise of their authority, they determine that it is required by the public interest and convenience; and in respect to the acts or neglect of the tenants of the stalls, by which the stalls occupied by them became offensive, the question of the defendants' liability will depend upon the inquiry, whether they have neglected any duty, which they owe to the public and to occupants of the neighborhood, to see to it, that the public places in the city are kept in proper condition.

The case of *Lacour* agt. *The Mayor, &c., of New-York,* (3 *Duer's Rep.* 406, *and the authorities there cited,*) may be profitably consulted for the principles bearing upon this subject.

Assuming, then, that the rebuilding of the market was done by the authority of the defendants, and that during its progress any other parts of the market-place might temporarily be used for market purposes, of which we entertain no doubt, and assuming that the defendants, under the evidence, sufficiently appear to have authorized the erection, and sanctioned the continuance of the sheds complained of, we think that the ruling upon the trial proceeded upon an erroneous assumption in regard to the defendants' liability. The form in which the case is presented to us suggests that this ruling was made for the purposes of the trial, in order that the question might be presented to the general term for more deliberate consideration.

The question to be determined was not merely whether the passage in front of the plaintiff's house was obstructed, but also whether access to his premises was obstructed unnecessarily and unreasonably, or for an unreasonable time, and also if the right of the defendants to cause the obstruction was conceded, or appeared from the evidence, then, whether it was

needlessly offensive or noxious, and the defendants caused the nuisance in this latter sense, or neglected any duty which they owed to the plaintiff by not abating it, if it proceeded from the acts or neglect of the tenants of the stalls or sheds, and the same was, for these reasons, needlessly injurious to the plaintiff.

During the erection of the new building, we cannot doubt the right and duty of the defendants to continue to provide proper places for the sale of provisions within the limits of the market-place, if there be space for that purpose; and if this be done for a reasonable time only, and in a proper manner, the plaintiff and others, though put to temporary inconvenience, and perhaps subjected to pecuniary loss, have no right of action. The very location they have selected subjects them to the consequence of a rightful exercise of the defendants' duty and authority for the public good.

In regard to the ruling on the trial, in receiving evidence to prove the plaintiff's damages, there was no error. If the defendants are liable at all, so far as they are liable they are bound to recompense the plaintiff for the damages unnecessarily produced by their acts under the views above suggested.

It is not denied that loss of custom is the proper ground of recovery.

To prove this was the object and direct tendency of the evidence; the plaintiff showed the actual receipts of his hotel for a year or more, previous to the obstruction complained of, the actual daily receipts during the continuance of the obstruction, and again the actual daily receipts for some months after the obstruction was removed. This furnished the means of computation, and of satisfactorily ascertaining the diminution of receipts. He also showed that the expenses were in the same, or about the same ratio to the receipts during the whole period.

When it is borne in mind that the defendant kept a refectory and lodging-house for resort of daily visitors for their various meals, and of transient persons for their lodgings, it is difficult to suggest any other mode of ascertaining the effect upon the plaintiff's business than this. To say that he must prove what persons were prevented visiting his house, and what meals they

would have taken and paid for, is to suggest a mode of proof obviously impracticable; and if it was done it would still leave the same inquiry, what would have been the profits upon the meals they took and paid for? which is now objected to.

The loss of custom, and the consequent loss of profits, is the very matter to be recompensed in this action; and the cases to which we are referred, in which loss of profits, it is said, cannot be recovered for, are not analogous.

In *De Winte* agt. *Wiltse*, (9 *Wend. R.* 325,) plaintiff recovered for loss of the rent he had been accustomed to receive for a house he erected to be let as an inn, or tavern, although in gen eral, in actions for breach of contract, loss of profits are not recoverable. (See *Blanchard* agt. *Ely*, 21 *Wend. R.* 350; *Downie* agt. *Potter*, 5 *Denio R.* 306; *Giles* agt. *O'Toole*, 4 *Barbour's Rep.* 261.)

And purely contingent, or speculative profits, it is sometimes said, are not the subject of recovery. This is a somewhat loose statement of the proposition, which does not exclude all reference to probable profits. It is undoubtedly true, under some circumstances, in every sense,—*e. g.*, A agrees to let a tavern house to B, and afterwards refuses to give a lease. The actual value of the house, contrasted with the sum paid, or to be paid therefor, is the damage sustained, and yet the elements of value consist in location, good will, if any, the long habit of travellers to resort to a well known stand, and like circumstances, and the experience of the past, must necessarily enter into the estimation of either the witnesses or the jurors. On the other hand, if a house be hired for a dwelling, the cost of another, having equal advantages, is the only guide in determining the damages.

One who fails to build and finish a house within a time specified in his contract, renders himself liable to pay what the use of the house is worth during the period of delay, and not the possible or probable profits of a business which a man may or may not, at his option, carry on within it.

Actions on the case of consequential damages, caused by the defendant's fraud or *tort*, proceed upon a more liberal view of

the measure of compensation,—*e. g.*, fraudulent violation of an agreement intended to preserve the good will of a business. A slander of a man in his profession, or of a merchant in his credit, and like cases of consequential injury, in which the measure of damages is not necessarily fixed and certain. The value of goods to be carried to the place of delivery. These, and many other cases necessarily bring the subject of profits into view.

To illustrate this precise case, suppose A —————— had, on a given day, by some wrongful means, prevented any customer visiting the plaintiff's house, can it be doubted that in an action for the consequential damages, he would be liable for the loss sustained by the plaintiff thereby. I think not; and the mode of proving the loss would be just the one adopted on the present trial.

In *Fink* agt. *Brown,* (13 *Wend. R.* 601,) the supreme court, and in *Fitch* agt. *Livingston,* (4 *Sand.* 514,) this court held, that, in case of a wrongful collision, the party wrongfully injured could not, by a proceeding by attachment under the statute, obtain a lien for anything beyond the actual injury to the vessel, and cost of repairs; but in both cases it is suggested that in an action on the case for consequential damages, the owner may recover for loss of earnings.

In *Masterton & Smith* agt. *The Mayor, &c., of Brooklyn,* (7 *Hill's Rep.* 71,) the right to recover profits that are the immediate and direct consequence of even a breach of contract, is sustained.

The case of *Wilkes* agt. *The Hungerford Market Company,* (2 *Bing. N. C.* 281,) is like the present, and warrants the recovery of the damages claimed for.

*Iverson* agt. *Moore,* (1 *Ld. Raymd.* 486, *and cases there cited,*) is to the like purport; and in *Lacour* agt. *The Mayor, &c., of New-York,* (3 *Duer's R.* 406,) above referred to, the right to recover for similar losses is discussed and fully recognized by this court.

Upon the ground first suggested, a new trial must be ordered. Costs to abide the event of the suit.