THE HOUSTON & TEXAS CENTRAL R'Y CO. v. H. C. MOLLOY.

(Case No. 1918.)

1. EVIDENCE — REMOVAL OF A DEPOT — DAMAGES. — In a suit against a railroad company, claiming damages for the depreciation in value of plaintiff's hotel property, caused by the removal of the depot, *held:*

(1) That the same evidence is admissible to show injury and its extent, whether it arises from a breach of contract or a tort.

(2) That any proof showing that by the act of another anything necessary to the advantageous use of property has been unlawfully withdrawn, tends to show depreciation in its value. When permanent injury to the use of real property is shown to have resulted from the unlawful act of another, it is proper for the owner to show the depreciation in the rental value, diminution of the business to which the property is adapted, or diminution in other like things resulting from the unlawful act, for these things give value to property. See cases cited in opinion.

(3) That the plaintiff was entitled only to recover the decrease in the value of his property resulting solely from the removal of the depot.

(4) That if the plaintiff built, relying on acts done, and on the faith of the acts and declarations of the railroad company and its agents, it was not important whether the plaintiff bought the lots on which he built at the time the defendant contracted to establish and maintain its depot at the place named, or subsequently. That the maps made and exhibited by the company were standing declarations of its intention to do what it had contracted to do.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

The following statement of the case by appellant is correct:

In 1871, when appellant's road was being constructed and was approaching Corsicana, W. G. Veal, acting as agent for the com-

pany, went to Corsicana to perfect plans for the location of a depot and to procure donations, etc. The citizens of Corsicana appointed a committee of which Maj. A. Beaton was chairman, to confer with Mr. Veal. He proposed to the committee that, for certain considerations which he named, among which was the donation of six hundred and forty acres of land adjoining the town on the east, appellant would bring its road to Corsicana and locate a depot on the six hundred and forty acres. Some of the citizens, however, desired to know the precise spot where the depot would be. Mr. Veal yielded, had the line surveyed and executed the following order: ·

"THE STATE OF TEXAS, *County of Navarro.*

"Know all men by these presents, that from and after this date a depot for the Houston & Texas Central Railroad is permanently located at or near the ground designated by Mr. Harris, assistant engineer of said railroad, on the six hundred and forty acres of land donated to said road by the citizens of Corsicana and vicinity. Said survey joins said town of Corsicana.

(Signed)                    " W. G. VEAL,
                               " Agent for said road.

" This April 8th, 1871."

The spot was designated by Harris between stations 552 and 554. Afterwards, on June 27, 1871, A. Groesbeck, then the vice-president of the company, executed the following:

"HOUSTON, TEXAS, June 27, 1871.

" The Houston & Texas Central Railway Company obligates itself hereby to establish a depot on the line of its road according to the best survey made by F. Harris, engineer of the company, and at or near the place between stations 552 and 554 pointed out by the said Harris on the tract of six hundred and forty acres of land on the east side of and adjoining the town of Corsicana, tendered by the citizens of Corsicana through their committee, Alexander Beaton, chairman, together with sundry other tracts of land and lots of ground according to the letter bearing date March 29, 1871, of the chairman, and list of the lands and lots of ground mentioned, and the plot descriptive of same, which depot shall be established as soon as the track of the road is built on said tract of six hundred and forty acres of land; provided good and sufficient deeds of conveyance are first made and delivered to W. J. Hutchins, W. R. Baker, F. A. Rice and A. Groesbeck, trustees appointed by agreement dated the 22d day of March, 1868, for the said land and lots of ground.

(Signed)        " THE HOUSTON & TEXAS CENTRAL R'Y Co.
                        "BY A. GROESBECK, V. P."

The road was built during the year and a depot was established at the point referred to.   The passenger depot was erected on the west side of the road and the freight depot on the east side.

At this time the appellee was engaged in the hotel business in Corsicana, and occupied a house on the public square about one-half mile from the point where the depot was established.

After the road was in operation, and after appellant had established and erected its depot, appellee purchased from appellant certain lots near the depot on which he erected a hotel building, and subsequently removed there and has done business there ever since. The lots were sold by the local agent of the company, who told appellee, at the time, that the depot was permanent and would never be moved, and appellee claimed that it was on the faith of this representation that he purchased.   Appellant had at that time placed on record a map of the six hundred and forty acre survey referred to in the contract made with the citizens of Corsicana, which map showed the erection of the depot at the point agreed on.

The depots, both freight and passenger, remained where first built until some time during the year 1881, when the Texas & St. Louis Railway Company constructed its road into Corsicana, intersecting appellant's road at a point two blocks south of its depot.   Soon afterwards a house was erected by the two companies at this intersection for a union depot, and appellant's offices were removed there, and its passenger business has since that time been done there.

On November 28, 1882, appellee brought this suit, alleging the execution by defendant of the instruments hereinbefore set out, and the removal of the depot, and that thereby he had been damaged. $5,000, and obtained a verdict for that amount.

*Frost, Barry & Lee*, for appellant, on the measure of damages, cited: De la Zerda v. Korn, 25 Tex. Sup., 188; Gordon v. Jones, 27 Tex., 620; Calvitt v. McFadden, 13 Tex., 324.

On estoppel, they cited: Jackson v. Stockbridge, 29 Tex., 314, 394; Bigelow on Estoppel, p. 486.

*Simkins & Neblett*, for appellee, on the measure of damages, cited: Winne v. Kelly, 34 Ia., 339; Rodgers v. Bemus, 69 Penn. St., 432; Gladfeldter v. Walker, 40 Md., 3; 1 Sutherland on Dam., 96.

On the charge of the court, they cited: 58 Tex., 130; 2 Sedg. on Dam., p. 133, note; I. & G. N. R. R. v. Dawson, 4 T. L. Rev., 275; Tex. & St. Louis R'y v. Robards, 60 Tex., 545.

Stayton, Associate Justice.— None of the assignments of error presented in brief of counsel question the right of the appellee to recover damages·for the depreciation in value of his property, caused by the removal of the depot from the place at which by contract it was originally placed.

There were but two claims for damages asserted in the pleadings:

One for the recovery of $750, alleged to have been paid by the appellee on the land which the appellant received as the consideration for its promise to establish and maintain its depot at the designated place.

The other for the depreciation in the value of the property of the appellee caused by the removal of the depot.

The former was expressly withdrawn or abandoned on the trial, and the jury were so informed by the charge of the court.

The first, second, third, fourth, fifth and sixth assignments of error relate to the same question, will be considered together, and are as follows:

1st. "The court erred in allowing the plaintiff to testify as to his damage by loss of custom, reduction in rents, and damage to the property for *hotel purposes* over defendant's objection that it was irrelevant and immaterial."

2d. "The court erred in refusing to strike out all the testimony introduced by plaintiff upon the reduction in the value of rents, the loss of custom, etc., plaintiff having withdrawn said issues from the jury."

3d. "The court having allowed evidence as to reduction in the value of rent, the loss of custom, damage to property for hotel purposes, etc., over defendant's objection, should not have allowed plaintiff to reap the benefit of such illegal testimony, and at the same time attempt to defeat the defendant's exceptions thereto, by withdrawing said issues from the jury, while the evidence introduced was allowed to remain and be considered by them."

4th. "The court erred in refusing to charge the jury, as requested by defendant, that they should not consider the evidence as to the depreciation in rent, the loss of custom, etc."

5th. "The court erred in paragraph 4 of its charge in stating to the jury that in considering the depreciation in value of the property in question, they should take into consideration the evidence as to loss in rents and loss in custom, etc., because the loss of custom and loss in rents are not elements of damage, nor are they admissible in .proof from which to assess the damage to the property itself, and also because said charge is on the weight of evidence."

6th. "The court erred in allowing testimony to show the depreciation of the property in question for the *particular use* of a hotel."

The evidence, to which objection was made, is thus fairly stated in brief of counsel:

"W. G. Veal, agent of the company in locating depot, testified: Lots contiguous to the depot are more valuable than others as hotels, restaurants, saloons, etc., and a change of the depot necessarily depreciates the property in value. The lots purchased by plaintiff were the best hotel lots on the map (railroad map); the passenger depot was established immediately in front of the hotel.

"Molloy testifies that he bought the lots as hotel lots, and erected the building entirely for hotel purposes, and it could not be changed to any other business without great change in the building, involving great outlay, and if changed into stores there would be no demand for them, owing to the fact that there is no travel or business on said street; that his hotel is not accessible to nor can it be seen from the present depot. That before removal he received $125 per month and board for four, worth $100, saloon worth $70, and two extra rooms at $25 each; total, $345. That immediately after the removal, his rent fell to $100 per month and board for two at $50, saloon at $30, and rooms at $40; total, $230; while at the time of trial it had fallen to $75 per month, saloon $8, $20 for the two rooms; total, $103. That he was damaged by the removal thirty-three and one-third per cent. of the value of the property. That his property was worth $15,000, and since the removal is worth $10,000.

"A. Beaton and Jas. Kerr testified that they dealt in city property a great deal; did not own hotels or know much about keeping one, but from their judgment in real estate the property had depreciated thirty-three and one-third per cent.

"R. C. Beale testified that as long as the depot was unchanged the Molloy House was the best paying property in the city; that though other good hotels were in the city, the Molloy House, from its peculiar location immediately in front of the depot, had the 'bulge' on the trade, and got nearly all the transient trade, which is always cash. That he boarded there awhile and had a good idea of the business. That now all the transient trade was cut off and the hotel was out of the line of travel and trade, by reason of the removal three blocks off. That the Molloy building is only fit for a hotel and built for that purpose. It would involve a large outlay to make it into anything else, and then the rents would be too low to pay investment. That he was well acquainted with real estate

values in Corsicana before and since removal. That the value of all property on Collin street has been affected by the removal of depot; that he would fix the depreciation of plaintiff's *property at fifty per cent.*"

The action of the court referred to in third assignment is thus fairly stated in brief of counsel:

"Plaintiff was permitted to introduce testimony as to his loss of custom, the depreciation of his rents, etc., over the objections of defendant, to which exceptions were saved. After the evidence was closed, all this testimony being before the jury, plaintiff's counsel arose and stated to the court that they relied solely on the question of depreciation in the value of the *property,* and did not claim anything for loss of custom or for the subscription paid. Defendant objected to the withdrawal of the issues — loss of custom, etc.— because it gave the plaintiff the advantage of getting his testimony before the jury to influence them, and then, in order to cure the error in the supreme court, withdrawing the issue under which said testimony had been introduced, thus making a different record on appeal. The court overruled the objection, and allowed plaintiff to withdraw the issues, to which defendant excepted.

"Defendant then moved the court to strike out all the testimony on the questions of loss of custom, depreciation in rents, etc. The court refused the motion, and defendant again excepted. Defendant next asked the court to charge the jury that they should not consider any evidence in the case as to loss of custom, depreciation in rents or payment of his subscription to defendant by plaintiff, but only the single question of the depreciation in the value of the property *itself*, resulting from the removal of the depot. The court refused the charge, and defendant again excepted."

The court charged the jury as follows:

"The only issues of fact for you to determine are as to whether or not the property specified in plaintiff's petition has been depreciated in value by reason of the removal of the passenger depot as specified and alleged in said petition, and, if so, the amount of such depreciation; and in determining the question of depreciation you *will* consider from the evidence only such depreciation, if any, which was caused by the removal of said passenger depot, and from no other cause. In considering said question, you are instructed that you can take into consideration *the evidence* as to *loss* in rents or *loss* in custom, if any, after said removal, only for the purpose of estimating the value of the property before and after said removal, and for no other purpose."

"If, therefore, you believe from the evidence that there was de-

preciation in the value of said property caused by said removal, you should find for plaintiff and against defendant for the amount of the same, and the measure of damages is the difference between the value of the property before and after the removal, and caused by the same, to be estimated by you from the evidence under the instructions herein given."

"If, however, you believe from the evidence that said property has not decreased in value; or if it has, such decrease was not caused by the removal of said depot, but by some other cause, such as the general depreciation in values in Corsicana, or the erection of other and more commodious hotels, or any other cause other than the removal of said depot, you will find for defendant."

From the statement thus made it clearly appears that the court below was of the opinion, and ruled, that the evidence referred to in the first, second and third assignments of error was admissible to prove the depreciation in the value of the property, and we see no reason to doubt the correctness of this conclusion.

It matters not, in so far as the rules of evidence are concerned, whether the depreciation in the value of property results from the violation of a contract which is but the evidence of a right and its extent, or from the violation of a right existing without contract by an act which in law is termed a tort. The same evidence is admissible in the one case as in the other to show the injury and its extent.

The value of property is largely affected by the use to which it is appropriate, and to which it is applied, and proof which shows that by the act of another anything necessary to its advantageous use has been unlawfully withdrawn, tends to show that its value is depreciated in the hands of its owner or of any other person.

When a permanent injury to the use of real property is shown to have resulted from the unlawful act of another, it is proper for the owner to show the depreciation in the rental value, diminution of the business to which the property is adapted, or diminution in other like things resulting from the unlawful act; for all these things but tend to show the depreciation in the value of the thing itself, which must depend on those things that alone give value to property.

The rule of evidence applicable to this class of cases is illustrated by many adjudicated cases. Parke v. Railroad Co., 43 Iowa, 640; Stetson v. Faxon, 19 Pick., 161; St. L., V. & T. H. R. R. Co. v. Capps, 67 Ill., 613; St. John v. The Mayor, 13 How. Pr., 532; Bonner v. Welborn, 7 Ga., 296; Dickinson v. Inhabitants, 13 Gray, 558;

Dewint *v.* Wiltse, 9 Wend., 326; I. C. R. R. Co. *v.* Grabill, 50 Ill., 246; Watterson *v.* Railroad Co., 74 Pa. St., 217.

What has already been said is applicable to the fourth, fifth and sixth assignments.

The seventh assignment is: "The court erred in refusing special charge No. 1, asked by the defendant, to the effect that, in estimating the damage, that produced by other causes than the removal, as by the erection of other hotels, building of the Narrow Guage depot, etc., should not be considered."

We are of the opinion that the appellant had the full benefit of the charge referred to in this assignment by the charge given by the court and quoted above.

The charge given must have been understood to inform the jury that they could not find in favor of the plaintiff for any decrease in the value of his property not solely the result of the removal of the depot. This was all the defendant was entitled to.

The charge given may be construed to mean that, if the property had been diminished in value by the removal of the depot, yet, if it had also been diminished in value by some other cause, then the plaintiff was not entitled to recover on account of the illegal act. If so construed, the defendant cannot complain of the charge. We think it unlikely, however, that the jury were in any way misled by the charge.

We do not understand that the plaintiff sets up or relies upon an estoppel *in pais;* but understand that he bases his right to recover on the violation of a contract supported by valuable consideration, to which he was in effect a party, which made it the duty of the defendant to construct and maintain its depot at a certain place.

But if his case depended on acts done, on the faith of the acts and declarations of the defendant and its agents, of whose authority to act no question can fairly arise, then we do not see that it was important whether the plaintiff bought the lots on which he built at the time the defendant contracted to establish and maintain its depot at the place named, or subsequently; for that contract, and the maps made and exhibited, were standing and continuing declarations of the intention of the defendant to do what it had contracted to do. Therefore the court did not err in refusing the fourth charge asked.

We are of the opinion that the third paragraph of the charge given did not assume that any fact existed about which there could be any controversy under the evidence.

If the court, however, had assumed that, by the terms of the con-

tract, defendant was bound to establish and maintain a passenger depot at the place named in the contract, and that the depot had been so established and subsequently removed, there would have been no error in this, for the uncontroverted evidence showed these facts to be true.

The verdict of the jury does not appear to be in any respect contrary to the evidence, nor does it appear to be excessive.

The judgment of the court below will be affirmed.

AFFIRMED.

[Opinion delivered November 17, 1885.]