INSURANCE CO. *v.* DUNSCOMB.

*(Jackson.*    May  26,  1902.)

1. INSURANCE, LIFE.    *Of debtor's life for benefit of his creditor.*

A creditor has an insurable interest in the life of his debtor to
the extent of the indebtedness. . Such insurance may be taken
in the name of the creditor himself or in the name of the
debtor for the creditor's benefit.  It may be taken either in
payment of the debt or merely as collateral security.  The
fact that the debtor could, at the date of the issuance of the
policy, or at any subsequent date, have defeated recovery of
the debt by a plea of the statute of limitations, does not defeat
or terminate the creditor's insurable interest in the debtor's
life, or render the policy void.  (*Post,* pp. 725–729.)

2. SAME.    *Same.*

Where a creditor takes insurance on the life of his debtor, either
in payment or as collateral security, the fact that the debt was
barred when the policy issued, or became barred or affected
with presumption of payment before the policy was payable,
does not debar the creditor from recovering or receiving the
proceeds of the policy as against either the insurer or the per-
sonal representatives or next of kin of the assured.  (*Post,*
pp. 729–735.)

3. SAME.    *Assignee of policy entitled to recoup premiums advanced.*

The assignee of a life policy—*e. g.,* a creditor who holds insur-
ance upon the life of his debtor—is entitled to reimbursement
out of the proceeds of the policy for annual premiums ad-
vanced and paid for the assured, and that, too, even if the
assignment is, for any reason, void.  (*Post,* pp. 735, 736.)

Case cited: Scoby *v.* Waters, 10 Lea, 557.

4. PAYMENT.    *Presumption of, rebuttable.*

Presumption of payment of a debt arising from lapse of sixteen
years after its maturity is rebuttable, and may be overcome ·
by evidence tending to show that it is still due.  The condi-
tion of the debtor as to solvency, or other circumstances, may

Insurance Co. *v.* Dunscomb.

repel the presumption. The lapse of more than sixteen years is held not to raise presumption of payment upon the facts of this case set out in the record. (*Post, pp. 733-735.*)

Cases cited: Stanley *v.* McKinzer, 7 Lea, 457; Husky *v.* Maples, 2 Cold., 24; Yarnell *v.* Moore, 3 Cold., 173; Lyon *v.* Guild, 5 Heis., 175; Carter *v.* Wolfe, 1 Heis., 700; Fisher *v.* Phillips, 4 Bax., 243. Anderson *v.* Settle, 5 Sneed, 202.

5. SAME. *Effect of plea of.*

A plea of payment admits the debt, and the onus of proving payment is on the defendant. (*Post, p. 735.*)

Case cited: Bass *v.* Shurer, 2 Heis., 216.

6. CORPORATIONS. *Right of stockholders or their representatives to recover assets of extinct corporation.*

Stockholders of a corporation that has become extinct by expiration of its charter, or their personal representatives, are entitled to recover its assets for *pro rata* distribution among themselves, according to their holdings of shares, where such assets constitute a surplus after full administration of its affairs and payment of all of its debts. (*Post, pp. 736, 737.*)

Code construed: § 5187 (S.); § 4168 (M. & V.); § 3431 (T. & S.).

Cases cited: State *v.* Bank, 5 Bax., 107; O'Connor *v.* Memphis, 6 Lea, 732.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. F. H. HEISKELL, Ch.

FRANCIS FENTRESS for Insurance Co.

HUDSON CARY and R. P. CARY for Dunscomb.

WILKES, J. The DeSoto Bank of Memphis was, on March 16, 1881, an incorporated bank under

the laws of the State of Tennessee. Its charter expired by limitation on March 20, 1883, but under our statute it continued to exist for five years, or until March 20, 1888, for the purpose of settling its business, disposing of its property and dividing its capital stock, and on the 20th of March, 1888, it became extinct.

On March 5, 1870, Ben K. Pullen applied to complainant for insurance on his life, and, in accordance with the application, complainant, on March 8, 1870, issued its policy No. 101,367 for $5,000, payable "to the order of the DeSoto Bank of Memphis, Tennessee, to the amount of the insured's indebtedness to said bank, the balance, if any, to his legal representatives."

On February 28, 1881, the DeSoto Bank was the holder of the following notes made by Ben K. Pullen:

| | | | | | |
|---|---|---|---|---|---|
| One dated March | 7, | 1874, for | ...... | $241 | 83 |
| One dated March | 8, | 1875, for | ...... | 153 | 39 |
| One dated March | 8, | 1876, for | ...... | 150 | 74 |
| One dated March | 8, | 1877, for | ...... | 148 | 04 |
| One dated March | 8, | 1878, for | ...... | 148 | 04 |
| One dated March | 8, | 1879, for | ...... | 139 | 67 |

Making a total exclusive of interest, of. $982 71

On said date (February 28, 1881) the DeSoto Bank, in writing, surrendered said policy No. 101-367 to complainant, and in this surrender Pullen joined. The consideration for the surrender, was the issuance of paid up policy No. 161,122, for $1,627,

payable to the DeSoto Bank of Memphis, Tenn., to the amount of the insured's indebtedness to said bank, balance, if any, payable to the insured's legal representatives.''

Pullen died July 15, 1900.

At the time of the legal death of the Bank, its stock was owned by four individuals, as follows: James Elder, $50,000; W. H. Wood, $50,000; Jno. B. Leach, $70,000; S. H. Dunscomb, $65,000. The wills and letters of administration show that all these parties died prior to 1900.

Their legal representatives, on December 19, 1900, filed a bill in the Shelby Chancery Court, seeking to enforce the collection from complainant therein of said paid up policy No. 161,122. On January 3, 1901, complainant filed this bill, as one of inter-pleader, and enjoined the prosecution of the first suit. To this bill the rival claimants of the fund made answer, and the Chancellor, upon the hearing, decreed in favor of the bank's stockholders, or their representatives. The heirs of Ben K. Pullen, and the administrator, bring the case here by appeal, and assign errors. The first and second assignments of error are based upon the assumption that the Chancellor held the notes executed by Pullen were not barred by the statute of limitations, or that they could not be presumed to be paid from the lapse of time. The decree of the Chancellor does not recite or show that it is based upon any theory of this kind, but is based upon a different

idea, but which, to some extent, involves the ques-- tions in these assignments.

The questions really adjudged by the Chancellor, are that the bill was properly filed as a bill of interpleader, and that the representatives of the stockholders of the expired bank, were entitled to the proceeds of the insurance policy. As to the first of these propositions, there is, and can be no serious controversy, and the last proposition is raised by the third and fourth assignments of error. Inci - dentally, however, we must notice the matters presented on the first two assignments. It is proper to note in the outset that this is not a suit on the notes of Pullen to enforce their collection. The defense of the statute of limitations and presumption as to payment, as to them, is not, therefore, raised, and cannot be in this suit as a defense to them, and the notes are only important so far as they bear upon the question of the right of the Bank or its representatives to the proceeds of the policy. It will be conceded at once that the Insurance Company could not interpose any defense of the statute of limitations or presumption of payment to a suit upon its policy. The right of action against it on the policy did not accrue until the death of Pullen in 1900. The policy is payable to the bank direct, to the extent of Pullen's indebtedness to it, and the bank had, therefore, an insurable interest in Pullen's life, when the policy was taken out, and afterwards, in any event, while the debts were subsisting. The

record leaves the matter in some doubt as to the terms upon which the bank held this policy, that is, whether an absolute payment of Pullen's indebtedness, or as a collateral security for the same.

On March 30, 1900, J. S. Dunscomb wrote to Ben K. Pullen, saying: "I find amongst my father's papers a memorandum of a policy he has on your life. I would like to know the full history of it." On April 27th, Pullen answered that he had given the DeSoto Bank a policy on his life as a sort of indemnity against loss in case of his death; and he further states that in the course of time, his inability to pay premiums had doubtless caused it to lapse.

Now, in either event the bank could, other things being out of the way, recover upon the policy as it had an insurable interest to the extent of its debt in Pullen's life.

In the case of *Rawls* v. *Insurance Co.*, 27 N. Y., 282, Rawls had procured a policy for $5,000 on the life of Fish, payable to Rawls himself. Among other defenses, the company plead that Rawls had no insurable interest in the life of Fish, and that any debt due from Fish to Rawls, had long since been barred by the statute. It was shown that Rawls had a valid debt when the policy was issued, and the Court held: "Regarding the policy in this case as, substantially, a contract of indemnity against the loss of the plaintiff's debt, and that, as an interest was required to support its inception,

a continuance of that interest is essential to its perpetuity, there was no pretense that the debt, or any part of it, had been paid. All that the case showed was that the statute of limitations had apparently run against the demand of the plaintiff at the death of Fish. But suppose the statute had attached, the interest of the plaintiff as a creditor in the continuation of the life of his debtor, had not ceased entirely. The debt was not extinguished as in a case of payment. It might be renewed by a new promise, and indeed without such promise, and be enforced by action, unless the defense of the statute was directly interposed. It is not a legal presumption that when the statute of limitations has once run, the debtor will refuse to revive the debt by a new promise, or interpose the defense of the statute in an action to recover it."

A leading case upon the question is *Dalby* v. *Insurance Co.*, 80 Eng. C. L. Rep., 364, where it is held that, "Where a policy effected by a creditor on the life of his debtor is valid at the time it is entered into, the circumstance of the interest of the assured in such life ceasing before the death does not invalidate it." This case is cited approvingly in *Olmstead* v. *Keys*, 85 N. Y. 598.

In *Curtis* v. *Insurance Co.*, 90 Cal., 249, it was contended that the claim of the creditor was barred by the statute of limitations at the time of the death of the debtor, and that, therefore, the creditor had no insurable interest and could not recover. The

Court held: "A debt, even though not legally collectible by reason of the bar of the statute, gives an insurable interest."

"The fact that the debtor may be armed with a legal defense against the creditor does not destroy the insurable interest of the latter in the life of the former. The debtor may be an infant, and yet the fact that the plea of infancy might be interposed would not make the life policy in favor of his creditors void. If the debt be barred by the statute of limitations, it nevertheless constitutes an insurable interest." *Insurance Co.* v. *Hennessey*, 39 C. C. A., 632.

The same rule is stated with equal clearness in 1 May on Insurance (3d Ed.), Sec. 108.

But, if we treat the policy as only a collateral security, and not the absolute property of the bank, what are the rights of the parties? "Whenever collateral security is given for a debt, the collateral will continue as a security until the debt is satisfied, unless both parties to the original contract agree to its surrender, or the pledgee, in some other way, discharges or releases it." Colbrooke on Collateral Securities (2d Ed.), 191, and note, citing *Williams* v. *Bank*, 72 Md., 441.

"The statute of limitations defeating simply the remedies upon a debt, does not operate in law as a discharge of the debt itself, which remains, so that, where negotiable instruments have been deposited as collateral security for the payment of a loan or

debt, the pledgee is entitled to retain possession of the same as against the pledgor, notwithstanding the statute of limitations might be pleaded to an action on the original debt." *Ib.*, 189, citing *Choteau* v. *Allen*, 70 Mo., 290.

"Since statutes of limitation, except in special cases, bar the remedy merely, and do not destroy the right, it is a generally accepted principle· that, where the security for a debt is a lien on property, real or personal, the fact that the right of action on the principal obligation is barred does not impair the remedy at law or in equity to enforce the lien, to which a different limitation may be applicable. By analogy to the rule that, where a plaintiff has two remedies for the same right, the bar of one does not affect his right to exercise the other, a creditor may enforce a lien upon the security, although the virtual effect may be that he will enforce payment of a barred obligation." 19 Am. & Eng. Enc. L. (2d Ed.), 177.

"The holder of a note with whom collaterals have been deposited has, while the statute is running, two remedies—one against the maker, by suit; the other against the collaterals. If he loses the first by lapse of time, he still has the second. He may not sue the maker, but he may exhaust the securities he holds in pledge, for the statute operates not upon his debt, but upon his right of action." *Hartranft's Estate*, 153 Pa. St., ·530.

Suppose that Pullen, before his death, had sought

to recover this policy from the bank, on the ground that the debt for which it was deposited or pledged was barred by the statute of limitations. Could he have maintained such suit? We think not. 19 Am. & Eng. Enc. L. (2d Ed.), 178; *Hudson* v. *Wilkinson*, 64 Texas, 607.

It is a familiar doctrine that, though a debt may be barred by the lapse of six years, so that no personal judgment may be taken on it, a mortgage executed to secure such debt could still be enforced, and the same reasoning and rules apply as against any presumption of payment by the lapse of time. This assignment is based on the idea that the notes not sued on should have been presumed, by the Chancellor, to have been paid. Payment of a debt may be presumed after a lapse of sixteen years from its maturity. But this is a, rebuttable presumption, and may be overcome "by any evidence tending to satisfy the Court that the debt is still due. The condition of the debtor as to solvency, or other circumstances, may repel the presumption." *Stanley* v. *McKinzer*, 7 Lea, 457. See, also, *Husky* v. *Maples*, 2 Cold., 24; *Yarnell* v. *Moore*, 3 Cold., 173; *Lyon* v. *Guild*, 5 Heis., 175; *Carter* v. *Wolfe*, 1 Heis., 700; *Fisher* v. *Phillips*, 4 Bax., 243; *Anderson* v. *Settle*, 5 Sneed, 202.

In *Stanley* v. *McKinzer*, *supra*, and *Anderson* v. *Settle*, *supra*, the debts were over twenty years old.

The notes held by the DeSoto Bank were made in March, 1874, 1875, 1876, 1877, 1878, and 1879.

They were not paid in 1881, for, on the 28th of February, of that year, Ben K. Pullen signed the surrender of the original policy, No. 101,367, and had the insurance company issue paid-up policy No. 161,122, payable to the DeSoto Bank, to the amount of its indebtedness, thus recognizing a debt at that date.

The production of any direct or positive evidence as to the actual fact of payment or non-payment of this indebtedness has been rendered impossible by the long lapse of time and the death of every stockholder in the bank, and especially Mr. Dunscomb, Sr., and Mr. Elder, who had the assets of the bank in charge. Five witnesses, however, testify to the fact that Pullen was a man of slender means. These gentlemen all show that he was hardly at any time able to meet more than the ordinary demands of life, and, from the statement which they make, it is practically impossible to believe that he was ever, at any time, in a condition to enable him to pay his debts. It is shown that his salary, for a good portion of the time, came from the city government, in whose employ he was, and this, of course, was exempt. Mr. Speer, who is an abstracter in the abstract office of the Title Guarantee & Trust Company, states that the records show no conveyance, at any time, of any real estate to Mr. Pullen. Pullen himself says, in his letter of April 27, 1900, that, "In the course of time, my inability to pay the premiums caused it (the policy) to lapse."

From this evidence, it is hardly conceivable that the notes were ever paid ; but, independent of this evidence, the mind can hardly avoid the irresistible conclusion that they are still unpaid, when it is remembered that the notes and policy remained in the hands of the stockholders of the bank from their execution up to the present time. Men do not pay their debts and leave the evidence of them in the hands of their creditors. Nor do they overlook policies of life insurance, worth hundreds or thousands of dollars, when they become entitled to them.

Another matter appears in the pleading of the Pullen heirs which tends to do away with the contention as to the presumption of payment, and to settle, beyond dispute, the existence of the debt. This matter is the plea of payment. A plea of payment admits the debt, and the onus of proof of payment is on the defendants. *Bass* v. *Shurer*, 2 Heis., 216.

It appears very evident from the record that the notes held by the bank were for the annual premiums due and accruing on the policy. It has been held that premiums paid on a life insurance policy by an assignee of the same are an equitable lien on the policy, even as against the interest of a minor whose assignment was void because of his minority, and the creditor who paid the premiums is entitled to collect the same and interest. *Scoby* v. *Waters*, 10 Lea, 557–563. And, even when an assignment of a life policy is void for the want of an insur

able interest in the assignee, or for other reasons, the assignee is, nevertheless, entitled to reimbursement from the proceeds of the policy for money paid by him for the premiums, with interest. 19 Am. & Eng. Enc. L. (2d Ed.), 97.

The third and fourth assignments raise the question of the right of the representatives of the defunct bank's deceased stockholders to sue for and reoerv. this fund.

The bank became extinct, as a corporation, March 20, 1888. Its debts were all paid. Its assets bec longed to the stockholders. All of them were dead- The right of action on the policy accrued in 1900. The insurance company did not contest its liability, and the amount of the policy has been paid into Court.

The question is now, to whom does this amount belong? In *State of Tennessee & Watson, Trustee,* v. *The Bank of Tennessee,* 5 Bax., 107 to 113, it was held that where Watson, trustee and receiver of the bank, had failed to sue for assets of the bank during the receivership, then creditors of the bank might collect assets not previously collected, and this after the expiration of the date limited by the statute to wind up the corporation, or any extension of such limit under the law.

In *O'Conner* v. *The City of Memphis,* 6 Lea, 732, it is said: "It is now well settled, both in England and in this country, that equity will, upon a dissolution of a corporation by the expiration of

its charter or otherwise, impound its property, real and personal, and appropriate it, first, to the payment of its debts, and then for the benefit of the stockholders, and the law is now independent of the statute that upon the civil death of a corporation its real estate does not revert to the original owner; the debts due to and from it are not extinguished, and its personal property does not vest in the State."

Section 5187 of Shannon's compilation provides as follows: "A corporation is not dissolved by non-use or assignment to others in whole or in part of its powers, franchises, and privileges, unless all the corporate property has been appropriated to the payment of the debts, and any creditor, for himself and any other creditors, whether he has recovered judgment or not, or any stockholder, for himself and other stockholders, may file a bill under the provisions of this chapter to attach the corporate property and have such property applied to the payment of the debts of the corporation, and any surplus divided among the stockholders."

This section recognizes the rights of stockholders to realize the assets that formerly belonged to the corporation, even though the corporation cannot sue. And this is the rule generally recognized. 9 Am. & Eng. Enc. L. (2d Ed.), 608. And the assets must be prorated and paid out in proportion as the subscriptions of stock have been paid. Cook on Stockholders, Sec. 641.

Insurance Co. *v.* Dunscomb.

We are of opinion, for the reasons stated, that the representatives of the deceased stockholders are entitled to receive the net proceeds of this policy in full after the payment of all costs which are directed to be paid out of the fund, and inasmuch as their demands, with interest, exceed face amount of the policy, it will be paid *pro rata* to them in accordance with the interests of their several intestates.