Thomas W. SCHLATER,
Plaintiff/Appellee,

v.

Joseph S. HAYNIE; Louis M. Haynie; Morning Surf East, Incorporated; and Aquafirm Systems, Inc., Defendants/Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 13, 1991.

Rehearing Denied Jan. 8, 1992.

Application for Permission to Appeal Denied by Supreme Court May 11, 1992.

920

Don L. Smith, Donald Capparella, Manier, Herod, Hollabaugh & Smith, Nashville, for defendants/appellants.

Culwell E. Ward, Ward, Derryberry & Thompson, Nashville, for plaintiff/appellee.

## OPINION

TODD, Presiding Judge.

The defendants, Joseph S. Haynie, Louis M. Haynie, Morning Surf East, Inc., and Aquafirm Systems, Inc., have appealed from a non-jury judgment against them and in favor of the plaintiff, Thomas W. Schlater, for $175,584.87 for a note, unpaid rent under a lease from Schlater to Morning Surf East (M.S.E.) and attorneys' fees.

The basic facts are not controverted:

On May 14, 1979, Buryl McClung, Gordon Thompson and another organized a Tennessee corporation named Morning Surf East, Inc., for the purpose of manufacturing and selling water beds under a license of patent rights from Morning Surf Corporation of Utah, of which the defendant Louis Haynie was president and part owner.

In 1980 and 1981, M.S.E. rented a building from plaintiff under a lease which is not involved in this suit.

Sometime after 1980, and before 1983, the defendant Joe Haynie was employed by

M.S.E. as production manager, and, in May, 1984, was promoted to president succeeding Buryl McClung.

During this period, Louis Haynie acquired part of the stock of M.S.E. and transferred some M.S.E. stock to Joe Haynie.

First American National Bank (F.A.N.B.) was the finance source of M.S.E. Virtually all of the assets of M.S.E. were encumbered to the bank by security agreement. In 1982 or 1983, M.S.E. defaulted on its obligation to F.A.N.B., at which time Louis Haynie guaranteed the debt of M.S.E. to F.A.N.B. to prevent foreclosure and acquired sufficient shares of M.S.E. to produce 50% ownership of the stock of M.S.E. Louis Haynie became a director and Chairman of the Board of M.S.E.

The guaranty of Louis Haynie secured a debt of approximately $225,000 which grew to approximately $650,000.00.

F.A.N.B. continued to hold a security interest in the property and receivables of M.S.E.

In 1984 or 1985, plaintiff and Buryl McClung, acting for M.S.E., negotiated a new lease on a larger building, which lease is the foundation of the present suit. On March 14, 1985, the new lease was executed by plaintiff and Joe Haynie as president of M.S.E. Although the previous lease had been secured by guarantors, the March 14, 1985 lease contained no guarantors.

Contemporaneously with the execution of the lease, M.S.E. executed a note to plaintiff for $10,000 for improvements made by plaintiff in the leased premises. This note is also a subject of the present suit.

In March 1987, plaintiff notified M.S.E. of default and forfeiture of leasehold for failure to pay rent and other obligations. On March 24, 1987, Louis Haynie wrote plaintiff on the letterhead of Louis M. Haynie, Attorney at Law, in pertinent part as follows:

Also, we are sorry for the inconvenience caused you in those cases in which the rent checks were late, and we feel we can avoid this in the future.

. . . .

In any event, please rescind your attempted forfeiture immediately and we will bring all payments current. We hesitate to pay you before you do this because we refuse to consent to your declaration of forfeiture.

. . . .

Sincerely,

/s/ Louis M. Haynie

On August 10, 1987, after further default, plaintiff wrote Louis Haynie requesting written acknowledgement of personal responsibility for rent, which request was refused.

On or about August 15, 1987, M.S.E. sold at auction all its unneeded, encumbered assets and paid the proceeds to F.A.N.B.

In September, 1987, Louis Haynie as sole stockholder, contributing $10,000 capital, formed a Kentucky Corporation named Aquafirm Systems, Inc. (A.S.I.). The unsold, encumbered assets of M.S.E. were moved to Bowling Green, Kentucky and used by A.S.I. in its operations with the knowledge and consent of F.A.N.B. which re-perfected its security interest in Kentucky and required A.S.I. to guarantee the debt of M.S.E. to F.A.N.B.

Payments on accounts receivable of M.S.E., in which F.A.N.B. held a security interest, were collected and shared by F.A.N.B. and A.S.I. under an agreement for financing operations of A.S.I.

In January, 1988, F.A.N.B. seized all assets of A.S.I. and M.S.E. and sold same, crediting the proceeds on the debts of A.S.I. and M.S.E. to the bank.

The damages due plaintiff from M.S.E. for breach of the lease and default on the note are stipulated to be $140,584.87.

The memorandum of the Trial Court includes the following:

3. The Court specifically notes that it has resolved all credibility questions in favor of plaintiff Schlater and against defendants Lou and Joe Haynie. The testimony of the two individual defendants was inconsistent, and each also made statements at trial that differed from his own statements made in prior

affidavits and/or depositions. The Court was not impressed with the attitude or demeanor of either defendant in attempting to reconcile these inconsistencies.

. . . .

5. The corporate veil should be pierced in this case as to Lou Haynie, Joe Haynie, and Aquafirm, and they should be jointly and severally liable to plaintiffs for all damages, because the requisite elements have been met.

a. Dominion was exercised over every aspect of the corporation (MSE) in this transaction.

b. The control was utilized specifically to breach the lease agreement by moving the company and transferring its assets to another entity in order to avoid further payment under the lease and on the note.

c. The control and breach *are* the proximate cause of the loss suffered by plaintiff.

6. Lou Haynie is not liable for breach of any individual promise to pay because the promise was not made in writing. T.C.A. Section 29-2-101.

7. Plaintiff has proven all elements necessary to establish that both Lou and Joe Haynie wrongfully procured MSE's breach of contract in violation of T.C.A. Section 47-50-109. *See TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn.App.1987). However, since the Court has previously pierced the corporate veil and found both men to be essentially parties to the contract, it cannot at the same time hold them liable for procuring a breach of their own contract. *See Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758 (Tenn.1977). If for any reason the Court's original finding was held to be error, then the Court believes that liability exists as to these two individuals on this alternative ground.

The Trial Court rendered judgment in favor of plaintiff and against all defendants for $140,584.87 plus $35,000 attorney's fee, or a total of $175,584.87.

On appeal, the defendants, Louis Haynie, Joe Haynie and Aquafirm Systems, Inc., present the following issues:

1. Did the Court err in concluding that Louis Haynie, Joe Haynie, and Aquafirm were each the alter ego of MSE and, therefore, liable for MSE's corporate debts?

2. Did the Court err in concluding that the damages for which Louis Haynie, Joe Haynie, and Aquafirm would be liable is the sum owed by MSE because of its breach of its lease agreement?

3. Did the Court err in entering an "alternative holding," to the effect that if its decision on alter ego was reversed on appeal, then it would hold that Louis and Joseph Haynie induced MSE to breach its Lease Agreement with Mr. Schlater and would impose treble damages under Tenn.Code Ann. § 47-50-109?

All defendants ... raise the following additional issue:

4. Did the Court err in awarding Schlater $35,000 in attorneys fees, where Schlater failed to present any evidence of reasonable attorneys fees at trial and did not reserve the issue of fees for determination until after trial?

The liability of M.S.E. is not controverted on appeal except in respect to the attorney's fee allowed by the Trial Court.

The liability of the remaining defendants was denied in the Trial Court and is denied in this Court.

It is noted that the Trial Court found the testimony of both individual defendants to be unreliable and rejected it. Unless real evidence compels a contrary conclusion, this Court must respect this finding of the Trial Judge. *State, ex rel Balsinger*, 222 Tenn. 272, 435 S.W.2d 803 (1968); *Brown v. Weik*, Tenn.App.1983, 725 S.W.2d 938. However, the disposition of this appeal is not based upon any testimony of defendants which was contradicted.

Inconsistencies or misconduct of individual defendants may affect their credibility, but do not establish their liability for the debts of M.S.E.

The liability of the individual and corporate defendants who did not originally contract to be liable must be based upon some

viable rule of law and competent evidence of facts to which such rule of law is applicable.

Plaintiff relies upon the evidence that Louis and Joe Haynie "exercised dominion and control" over M.S.E. As stated above these two individuals were the principal officers and stockholders of M.S.E. It is inherent in the nature of a corporation that some person or persons must control and execute the actions of a corporation which must act through its officials. *Shoup Voting Machine Corp. v. Hamilton County*, 178 Tenn. 14, 152 S.W.2d 1029 (1941); *Rural Educational Assn. v. Bush*, 42 Tenn. App. 34, 298 S.W.2d 761 (1957).

■ There is no general rule that stockholders, directors or officers of a corporation are liable for its debts merely because they controlled or "dominated" the corporation.

■ A corporation is a person separate and apart from the persons who own the stock, and the burden of an obligation of the corporation is not a burden which may be regarded as falling upon the stockholders, although it indirectly affects them. *General Tel. Co. of Southeast v. Boyd*, 208 Tenn. 24, 343 S.W.2d 872 (1961).

■ Ordinarily a director of a corporation is an agent of the corporation and is liable only to the corporation. To become directly liable to a creditor, there must be some violation of statutory duty or other conduct which establishes a privity of contract with or tortious injury to the creditor for which an action *ex delicto* will lie. *Merriman v. Smith*, Tenn.App.1979, 599 S.W.2d 548.

■ Officers and directors of a corporation are liable to it for malfeasance and misfeasance and, in proper cases shareholders and creditors may be subrogated to the rights of the corporation against its officers and directors. *Bowman v. Home Medicine Co.*, 7 Tenn. CCA (Higgins) 265 (1917).

Plaintiff's written argument states:

... It is the Plaintiff's position, as was found by the Trial Court, that the Hay-

nies have continuously controlled MSE for their own benefit and with indifference to the detriment imparted upon the corporation. The attitude of the Haynies and their course of conduct has shown a pattern of individually motivated activity inconsistent with corporate entity theory. This attitude and conduct was an integral part of the move to Kentucky. Such a factual determination by the Trial Court is well supported and will be discussed below.

Plaintiff's argument on this subject has been meticulously searched for citation to parts of the record evidencing facts which support the quoted argument. No such citation has been found. (Citation of the Memorandum of the Trial Court is not citation of evidence.)

■ Apparently plaintiff and the Trial Court viewed the removal of the residue of encumbered assets from Tennessee to Kentucky to be a fraudulent act for which both corporation and officers would be liable to an individual creditor. This Court cannot agree. There is no evidence that any unencumbered property was removed from Tennessee, or that the value of the property exceeded the lien debt thereon so as to leave an equity interest available to creditors.

The uncontradicted evidence is that encumbered property of the corporation was sold at foreclosure and the proceeds of the sale were *applied upon the lien debt without satisfying it.* This Court is at a loss as to how any injury was suffered by plaintiff or any other creditor as a result of removal of encumbered assets to Kentucky, there being no evidence of an equity in the assets because their value exceeded the claim of the lien holder. There is no evidence that defendants concealed, removed or fraudulently disposed of any asset of the corporation which plaintiff might have subjected to the payment of his debt.

Plaintiff next argues that the Trial Court was justified in "piercing the corporate veil" to impose liability upon Louis and Joe Haynie and A.S.I. citing *In Re: B & L Laboratories v. McLemore*, 62 B.R. 494 (1964), a decision of a bankruptcy Trial

Court, in which the trustee in bankruptcy of a bankrupt corporation sought recovery of corporate assets for the benefit of all creditors, and which holds that claims of officers against a bankrupt corporation might be "equitably subordinated" to the claims of other creditors where the officers caused the corporation to systematically divert its assets to the benefit of said officers. The same opinion holds that such officers would hold any assets so received as trustees for the creditors of the corporation. The same opinion states that Tennessee Courts have recognized several theories for "piercing the corporate veil", including "alter ego", instrumentality, identity, agency and estoppel, and that the burden of proof rests upon the party seeking to pierce the veil. The cited authority does not support relief against the individual defendants or the successor corporation under the evidence in this record.

*Continental Bankers Life Ins Co. of the South v. Bank of Alamo*, Tenn.1979, 578 S.W.2d 625, involved a parent corporation and its subsidiary and is not applicable to the present case for that reason.

■ The separate identity of a corporation may be disregarded upon a showing that it is a sham or a dummy or where necessary to accomplish justice. *Oak Ridge Auto Repair Service v. City Finance Co.*, 57 Tenn.App. 707, 425 S.W.2d 620.

■ In an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical. *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.*, 33 Tenn. App. 439, 232 S.W.2d 309.

■ The principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity. 18 Am.Jur.2d Corporations, § 43, p. 842, notes 79, 80, 81.

■ Each case involving disregard of the corporate entity must rest upon its special facts. Generally, no one factor is conclusive in determining whether or not to disregard a corporate entity; usually a combination of factors is present in a particular case and is relied upon to resolve the issue. 18 Am.Jur.2d Corporations, § 48, p. 847, notes 41 and 42.

■ Even though corporate formalities have been observed, one may still challenge the corporate entity by showing that he has been the victim of some basically unfair device by which the corporate form of business organization has been used to achieve an inequitable result. But where a creditor was well aware of the corporation's status, the controlling stockholders would not be held individually liable under the corporation's contracts. 18 Am.Jur.2d Corporations, § 48, p. 851, notes 60, 61.

While generally, a corporation will be looked on as a legal entity, as discussed supra § 8, the corporate fiction will be disregarded and the corporate veil pierced in appropriate, special, unusual, or compelling circumstances, as where sufficient reason to the contrary appears, where the corporation is created or used for an improper purpose, or where the corporate form has been abused, as when used to an end subversive of the corporation's policy. In such cases, courts will disregard the corporate entity and deal with substance rather than form, as though the corporation did not exist.

Ascertaining whether the separate corporate entity should be disregarded and the corporate veil pierced, depends upon the particular circumstances of each case.

18 C.J.S. Corporations § 9, pp. 274, 275.

There is a presumption that a corporation is a distinct entity, separate from its shareholders, officers, directors or affiliated corporations, and the party wishing to negate the existence of such separate entity has the burden of proving facts sufficient to justify piercing the corporate veil.

18 C.J.S. Corporations, § 18, p. 290.

■ Plaintiff states correctly that Louis and Joe Haynie treated M.S.E. as their own business enterprise. This fact does not justify holding the stockholders

liable for a debt of the corporation, for the owners of a corporation have a right to control it so long as they do not use the control to defraud creditors of the corporation.

Plaintiff relies upon the fact that M.S.E. paid royalties to Morning Surf–Utah after a defect was found in the registration of its patent. The patent was not revoked, and the defect in registration was corrected. M.S.E. suffered no loss as a result of the defect in registration.

Plaintiff complains that Louis and Joe Haynie continued to collect royalties after the Morning Surf–Utah charter was revoked. Upon the dissolution of a corporation, the stockholders succeed to the equitable ownership of its assets subject to the claims of the creditors of the corporation. *Connecticut Mut. Life Ins. Co. v. Dunscomb,* 108 Tenn. 724, 69 S.W. 345, 58 L.R.A. 694, 91 Am.St.Rep. 769 (1902).

Plaintiff next complains that Louis and Joe Haynie treated the accounts receivable of M.S.E. as accounts of the new Kentucky corporation. The evidence shows that F.A.N.B. held a security interest in the accounts of M.S.E. to secure a large loan, and that the accounts were collected for the benefit of F.A.N.B. which allowed part of the collections to be used by A.S.I. which had assumed the debt of M.S.E. to the F.A.N.B. The net result of these transactions was that the new corporation did realize some monetary benefit from the collections, but the benefit came from F.A.N.B., which held the security interest. M.S.E. had no real interest in the accounts, the bank loan being greater than the sum of the assets of M.S.E.

Plaintiff asserts that the reason for the move to Kentucky and the organization of Aquafirm was to avoid payment of debts of M.S.E. It is true that the move and organization of a new corporation enabled the continuation of business (with additional capital from Louis Haynie), but this fact, unaccompanied by fraudulent appropriation of property of M.S.E., does not produce a liability to the creditors of M.S.E.

Plaintiff next asserts that the actions of Louis Haynie were motivated by a desire to reduce the bank loan for which he was personally liable. So long as no asset of M.S.E. was fraudulently appropriated for this purpose, the motive for favoring a creditor which held a lien on all the assets would not sustain liability of a corporate officer to an unsecured creditor. *Tennessee Racquetball Investors, Ltd. v. Bell,* Tenn.App.1986, 709 S.W.2d 617.

Plaintiff next argues that Louis Haynie is liable to plaintiff because he was in control of M.S.E. and caused it to breach its lease with plaintiff. The breach of the lease was the non-payment of rent, for which plaintiff twice declared a forfeiture. The non-payment of rent was simply for lack of funds. There is no showing that M.S.E. had funds to pay the rent which were fraudulently diverted out of the corporation or that anyone fraudulently induced M.S.E. to forego paying its debt to plaintiff.

Plaintiff cites *Electric Power Board v. St. Joseph Valley Structural Steel Corporation,* Tenn.1985, 691 S.W.2d 522. This was an instance of a parent corporation's liability for injury from defective equipment manufactured by its subsidiary, which is not comparable with the present case wherein only one corporation existed at the time the lease was executed, and there is no showing of deception as to ownership of assets. Plaintiff had dealt with M.S.E. previously and was familiar with its structure. There is no evidence that he was misled at the time the lease was executed.

Plaintiff's only complaint is that he was unable to collect delinquent rent under a lease with a corporation which became insolvent because of unprofitable operations during which all of the corporation's assets had been pledged to a bank to obtain operating funds. This, standing alone, is insufficient to establish liability for the debt against officers, stockholders, or the corporation which was permitted by the bank to use some of the mortgaged assets in an effort to pay the debt from profits of

an operation which also proved unprofitable.

 Plaintiff insists that Lewis and Joe Haynie are liable under T.C.A., § 47–50–109 for inducing the breach of contract. The act of a corporate officer in causing the corporation to pay one creditor rather than another is not a violation of the cited statute. This is especially true where the corporation is insolvent and the favored creditor holds a mortgage on all assets of the corporation.

Counsel for plaintiff have performed a commendable task of marshalling every authority and circumstance which might enable plaintiff to collect his debt. In the view of this Court, the law and the circumstances of this case do not support liability of any of the defendants except M.S.E.

■ Defendants complaint of the award of attorneys' fees without proof of reasonableness. There is no evidence of reasonableness, but the plaintiff testified that he contracted with his counsel for a one-third contingent fee. The Trial Court is able to take judicial notice from the volume of this record and the insolvency of the debtor that the work of counsel has been extensive and that the chances of collecting a debt from a defunct corporation are so slim, that a generous contingent fee is necessary to motivate the excellent efforts of counsel. *Wilson Management v. Star Distributors,* Tenn.App.1988, 745 S.W.2d 870.

The judgments of the Trial Court against Joseph S. Haynie, Louis M. Haynie, and Aquafirm Systems, Inc., are reversed and vacated, and plaintiff's suits against these defendants are dismissed. The judgment against Morning Surf East, Incorporated, is affirmed. Costs of this appeal and Trial Court costs will be taxed three-fourths to the plaintiff and one-fourth to Morning Surf East, Incorporated. The surety on the bond of Morning Surf Incorporated for costs on appeal will be jointly taxed with the portion of appellate costs taxed to that defendant.

The cause is remanded to the Trial Court for entry of judgment in accordance with this opinion and any other further proceedings which may be necessary and proper.

Reversed in part.

Affirmed in part.

Remanded.

LEWIS and CANTRELL, JJ., concur.