IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 29, 2000 Session

## EMERGICARE CONSULTANTS, INC. v. BARBARA A. WOOLBRIGHT, ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. 109661-3; The Honorable D. J. Alissandratos, Chancellor

No. W1998-00659-COA-R3-CV - Filed December 29, 2000

In this action, Emergicare Consultants, Inc., seeks to pierce the corporate veil of Medic Ambulance Service, Inc. Emergicare and Medic entered into a contract whereby Emergicare was to manage Medic. The purpose of the management contract was to streamline Medic in preparation for a sale to an ambulance consolidator. Emergicare claims that once it delved into the management of Medic, it discovered several abuses of the corporate form. As a result, Emergicare now seeks to pierce the corporate veil to impose personal liability on Medic's president, Barbara Woolbright, in order to recover $64,000 due under the management contract.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

James W. Surprise, for Appellant

Ronald T. Riggs, for Appellee

**OPINION**

**Facts and Procedural History**

The appellant, Medic Ambulance Service Inc. ("Medic"), is a corporation whose business includes performing emergency medical services and emergency medical transportation within Shelby County, Tennessee. Barbara Woolbright's husband owned and managed the company before his death. After his death, Ms. Woolbright took over, and she is the current president of Medic. The Woolbrights employed several family members at Medic. Mr. and Mrs. Woolbright collectively owned ninety-nine percent of the shares of Medic ambulance.

On July 2, 1996, the appellant, Emergicare Consultants, Inc. ("Emergicare"), entered into a contract with the appellee, Medic, in which Emergicare agreed to facilitate a sale of Medic's assets to an ambulance consolidator. After the parties realized that the sale of Medic was not immediately feasible, Emergicare entered into a management agreement with Medic on October 28, 1996, in order to make Medic a viable product for a later sale. Under the agreement, Emergicare was given complete managerial control of Medic. Medic was obligated to pay Emergicare $10,000.00 per month under the terms of the contract, but Medic never paid the monthly fee in full. Medic is now a defunct corporation. The management agreement is the basis for the debt underlying this case.

When Emergicare began managing Medic, Emergicare claimed to have discovered several abuses of the corporate form. Emergicare argued that but for the abuses of the corporate form, Medic would have been able to pay Emergicare the full contract price. In contrast, Medic argued that Emergicare had knowledge of the abuses of the corporate form and was given broad management powers to correct the abuses of which it now complains.

At trial, the trial court ruled in favor of Emergicare for $65,000.00 against the corporate defendant Medic, and he ruled in favor of Defendant Barbara Woolbright, absolving her of any personal liability for the debt of the corporation.

### Standard of Review

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the trial court's findings of fact. T.R.A.P. 13(d).

### Law

The sole issue for our review is whether the actions of the appellee, Ms. Barbara Woolbright, were sufficient to justify piercing the corporate veil of Medic and imposing personal liability on her.

There is a presumption that a corporation is a distinct legal entity, wholly separate and apart from its shareholders, officers, directors or affiliated corporations, and the party wishing to negate the existence of such separate entity has the burden of proving facts sufficient to justify piercing the corporate veil. See Schlater v. Haynie, 833 S.W.2d, 919, 925 (Tenn. Ct. App. 1991).

The separate identity of a corporation may be disregarded upon a showing that it is a sham or a dummy or where necessary to accomplish justice. See Oak Ridge Auto Repair Serv. v. City Finance Co., 425 S.W.2d 620 (Tenn. Ct. App. 1967). In an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical. See E.O. Bailey & Co. v. Union Planters Title Guar. Co., 232 S.W.2d 309 (Tenn. Ct. App. 1949). However, the principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately, since there is a presumption of corporate regularity. See 18 Am.Jur.2d *Corporations*, § 43, nn. 79, 80, 81 (1985).

Each case involving disregard of the corporate entity must rest upon its special facts. Generally, no one factor is conclusive in determining whether or not to disregard a corporate entity; usually a combination of factors is present in a particular case and is relied upon to resolve the issue. See Schlater v. Haynie, 833 S.W.2d 919 (Tenn. Ct. App. 1991); see also 18 Am.Jur.2d *Corporations* § 48, nn. 41 & 42; 18 C.J.S. *Corporations* § 9 (1990). Corporate veils are pierced when the corporation is liable for a debt but it is without funds due to some misconduct on the part of the officers and directors. See Anderson v. Durbin, 740 S.W.2d 417 (Tenn. Ct. App. 1987).

In Federal Deposit Insurance Corporation v. Allen, 584 F. Supp. 386 (E.D. Tenn. 1984), the court outlined some factors to be considered in determining whether to pierce the corporate veil. The factors to be considered are (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities. See id. We note that while the factors listed above are to be considered, no single factor is conclusive. As stated earlier, the conditions under which the corporate entity will be disregarded vary according to the circumstances present in each case.

**Analysis**

In the present case, the appellant cites to several alleged abuses of the corporate form. Specifically, the appellant emphasizes that:

1) Medic paid two of Mr. Woolbright's sons as full time employees, even though there is no evidence that they rendered any noticeable services to the corporation.
2) Mike Woolbright, the son of the late Mr. Woolbright, the owner, misappropriated between $200,000.00 - $250,000.00 of corporate money, but was never pursued for repayment and continued to work and draw a full salary plus benefits.
3) Bobby Joe Woolbright, the brother of the late owner of Medic, ceased to actively work in the company, but continued to draw full benefits and salary.
4) Bobby Joe Woolbright had a lien against him from a Mississippi creditor. In order to protect him from this lien, the company paid his salary to his wife so that the creditor could not get to his earnings.
5) Defendant Woolbright put corporate money into a separate bank account in the name of "MAS" for the purpose of hiding corporate funds from creditors.
6) During this period of time, with the full knowledge of Mrs. Woolbright, the company was making payroll deductions for taxes, but was not forwarding them to the IRS.

7) Even though the company was losing its contracts and thus having problems paying creditors, Mrs. Woolbright took no steps to adjust salaries of family employees who were rendering no known services or of family members who had stolen substantial assets from the company.
8) Mrs. Woolbright admitted that she would not have treated non-family members in the same way as family members.
9) The above actions occurred at a time when the company was unable to pay its debts to third parties.

First, we note the preferential treatment that Mr. and Mrs. Woolbright gave to their family members. The Woolbrights paid family members who were not rendering any noticeable services to the corporation. Also, they allowed Mike Woolbright, the son of the late Mr. Woolbright, to misappropriate between $200,000.00 to $250,000.00 of corporate funds without any repercussions whatsoever. In addition to not pursuing Mike Woolbright for the stolen money, the Woolbrights allowed him to continue working at Medic drawing a full salary plus benefits. We find that this is an abuse of the corporate form, as the Woolbrights were preferring family members over creditors. As noted earlier, factor number eight from Federal Deposit Insurance Corp. v. Allen, 584 F. Supp. 386 (E.D. Tenn. 1984), states that a corporate veil can be pierced upon "the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors." Id. at 397. We find that the above actions were a clear diversion of assets that preferred family members to the detriment of creditors.

Additionally, we find it necessary to mention another instance of preferential treatment to a family member that was detrimental to a creditor. Bobby Joe Woolbright, the brother of the late owner of Medic, had a lien against him from a Mississippi creditor. The lien was only against Bobby Joe Woolbright and not his wife. As a result, in order to protect Bobby Joe from this lien creditor, Medic paid Bobby Joe's salary to his wife so that the lien creditor could not get to his earnings. When asked about the incident at trial, Mrs. Woolbright stated, "[w]ell, they had - - down in Mississippi, they had some kind of problem with a lien, and it was just against Bob. It wasn't against Pat. So we just put the check in her name so that they couldn't get his check." We find that this is a clear abuse of the corporate form, as Medic was once again assisting a family member in the diversion of assets which resulted in a detriment to a creditor.

We also note the fact that Barbara Woolbright put corporate money into a separate bank account in the name of "MAS" for the purpose of hiding corporate funds from creditors. At trial, Ms. Woolbright testified as follows:

> Q. Now, Mrs. Woolbright, you did testify in your deposition that you established a separate bank account in the name of MAS; is that right?
> A. Yes.
> Q. And into that bank account went corporate funds, did it not?
> A. Yes. Well, that's what the MAS is, Medic Ambulance Service.
> Q. Well, you may know that, but if I were looking for a Medic Ambulance Service account, I certainly wouldn't be able to find it under MAS, would I?

A. Well, that was the purpose because a debtor had managed to get - - whatever they get - - a Court Order to get into my checking account and took $9,000 out for a debt, and that was $9,000 that was earmarked for the IRS.
Q. So you wanted to hide those corporate assets so they - -
A. From the creditors, yes. . . .

We find that these actions by Medic, in accordance with factor number nine set out above in <u>Allen</u>, constituted "the use of the corporation as a subterfuge in illegal transactions." <u>Allen</u>, 584 F. Supp. at 397.

We also note that Barbara Woolbright and her late husband collectively owned ninety-nine percent of the stock of Medic Ambulance. Factor number four in <u>Allen</u> is "the sole ownership of stock by one individual." <u>Allen</u>, 584 F.Supp. at 397. For all intents and purposes, Mr. and Mrs. Woolbright had sole control of the corporation. "In an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical." <u>See E.O. Bailey & Co. v. Union Planters Title Guar. Co.</u>, 232 S.W.2d 309 (Tenn. Ct. App. 1949). Additionally, Ms. Woolbright admitted that she would not have treated non-family members in the same way as family members. Moreover, all of the above actions occurred at a time when the company was unable to pay its debts to third parties.

Finally, the court below held that "the Plaintiff was in a position to know or reasonably know of the circumstances that the Plaintiff now complains about." (Trial Transcript, pg. 122). Neither counsels' briefs nor our own research leads us to any case that is factually similar to the one at bar regarding the amount of knowledge one can possess about corporate abuses and still pierce the corporate veil. While appellant may have been aware that Medic employed family members and that this was not best for the corporation, we find that appellant did not discover, nor was he in a position to discover, the full extent of the abuses of the corporate form until he had already signed the management contract and fully delved into the operations of Medic.

The separate identity of a corporation may be disregarded upon a showing that it is a sham or dummy or where necessary to accomplish justice. <u>See Oak Ridge Auto Repair Serv. v. City Finance Co.</u>, 425 S.W.2d 620 (Tenn. Ct. App. 1967). Corporate veils are pierced when the corporation is liable for a debt but is without funds due to some misconduct on the part of the officers and directors. <u>See Anderson v. Durbin</u>, 740 S.W.2d 417 (Tenn. Ct. App. 1987). "Usually, corporate veils are pierced – that is, the legal entity disregarded and the true owners of the entity held personally liable – when the corporation is liable for the debt but is without funds due to the skullduggery or downright fraud on the part of the directors and officers. . . ." <u>See id.</u> at 418. We hold that, under the unique facts of this case, due to the Woolbrights' fraud and misconduct in using the corporation as a mere instrumentality to benefit their family members to the detriment of creditors, this is a case where justice demands that the corporate form be disregarded.

**Conclusion**

Accordingly, for the aforementioned reasons, we hereby reverse and remand to the trial court for entry of judgment consistent with this opinion to include the defendant Barbara Woolbright. Costs on appeal are taxed to appellee, Barbara Woolbright, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE