IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 30, 2002 Session

## THE OCEANICS SCHOOLS, INC. v. CLIFFORD E. BARBOUR, JR.

Appeal from the Chancery Court for Knox County
No. 142654-3     Sharon J. Bell, Chancellor

FILED MARCH 14, 2003

No. E2002-00181-COA-R3-CV

The Oceanics Schools, Inc. ("the plaintiff") filed what it characterizes as an action to enforce the judgment ("the OSC judgment") it had previously obtained against Operation Sea Cruise, Inc. ("OSC"). In the instant action, the plaintiff sued Clifford E. Barbour, Jr., the alleged alter ego of the corporation, seeking to pierce the corporate veil of OSC in order to enforce the OSC judgment against Barbour. The trial court found that Barbour was in fact the alter ego of OSC; consequently, the court allowed the plaintiff to pierce the corporate veil to enforce the OSC judgment against Barbour. He appeals, raising a number of issues. As modified, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Brian C. Quist and Jason E. Fisher, Knoxville, Tennessee, for the appellant, Clifford E. Barbour, Jr.

J. Douglas Overbey and Ben M. Rose, Knoxville, Tennessee, for the appellee, The Oceanics Schools, Inc.

**OPINION**

I.

This is a case with a long, interesting and unusual, factual background and procedural history. In the current litigation, the trial court limited the issues before it to the sole issue of whether Barbour was the alter ego of OSC. This case was tried against the background of its long history, which history was set forth by us in some detail in connection with an earlier appeal of the

underlying litigation between the plaintiff and OSC.[1]  The pertinent portion of this history, as excerpted from our opinion in that case, is as follows:

> [Barbour] formed [OSC], under the laws of Panama in 1965 for the purpose of acquiring ownership of, repairing, and operating the sailing vessel "Antarna."  Barbour owned 100 percent of the shares of OSC, which purchased the sailing ship in 1967 and extensively repaired and restored it.  In 1971, [the plaintiff] chartered the Antarna from [OSC] for use as a school ship in exchange for [the plaintiff's] providing repairs and supplies to make the vessel operational.
>
> [The plaintiff] invested approximately $630,000 in repairs and supplies for the Antarna and began using the vessel in its school program.  In March 1972 [OSC] reclaimed possession of the vessel in the Panama Canal Zone and subsequently sold the Antarna to a third party,[2] who sailed the ship out of Panamanian waters to the Azores, Portugal.  The proceeds of that sale were paid by [OSC] to Barbour in repayment of "a portion of the loans to the corporation by [Barbour]."
>
> [The plaintiff] filed suit against [OSC] and the vessel by Writ of Attachment in the District Court of Ponta Delgada, Azores, Portugal, for breach of contract and obtained a judgment against [OSC] for $929,815.55 plus interest.[3]  That Court then issued a Rogatory Letter to the Circuit Court for Knox County, Tennessee for seizure of properties of [OSC] or any other persons as may be liable for the obligations of [OSC], and apparently identifying [Barbour], Dorothy Drake Barbour and David Barbour as directors and managers of [OSC].
>
> [The plaintiff] filed its Complaint in Knox County Circuit Court to domesticate the Portuguese Judgment, and served summons on [Barbour] on May 15, 1995, through his attorney, Michael Fitzpatrick, who answered in this manner:
>
>> [] Both the Complaint and the Rogatory Letter attached thereto leave the impression that the

---

[1] *Oceanics Schs., Inc. v. Operation Sea Cruise, Inc.*, No. 03A01-9904-CV-00153, 1999 WL 1059678 (Tenn. Ct. App. E.S., filed Nov. 19, 1999).

[2] The vessel was sold in the summer of 1978.

[3] The judgment was entered in the Portuguese court on October 19, 1979.

domestication is against not only the named defendant, but also three individuals including [Barbour]. The judgment does not purport to do so. To the extent that the Complaint attempts to do so, the Judgment is void and of no force or effect for the failure to serve process; comply with due process; or to name [Barbour] as a party in the final judgment.

By Order of the Circuit Court for Knox County, the Portuguese Judgment against [OSC] was domesticated on March 26, 1997. However, upon execution of that judgment, no assets of [OSC] were found. After discovery by [the plaintiff] submitted to and answered by [OSC], [the plaintiff] filed a "Motion for Issuance of Writ of Execution or, Alternatively, to Amend the Complaint to Add a Party Defendant," on December 1, 1998, asking the Circuit Court to issue a writ of execution against the real and personal property of [Barbour] or allow [the plaintiff] to amend the domestication Complaint to add Barbour as a party-defendant. For grounds, [the plaintiff] alleged that Barbour owned 100 percent of the shares of [OSC], that he was at all times a director and secretary/treasurer of that corporation, that he failed to adequately capitalize the corporation, and that he made personal loans to the corporation to gain an unlawful preference as a purported creditor over future creditors such as [the plaintiff]. Further, [the plaintiff] alleged that [OSC] failed to observe corporate formalities and could not produce corporate documents. In short, [the plaintiff] says [OSC] is the alter ego of Barbour, the corporate veil should be pierced, and Barbour found liable for the judgment against [OSC] even though he was not a defendant in either the original suit where the judgment was obtained by [the plaintiff] against [OSC] or in this suit.

[OSC] responded, denying that [Barbour] is the entity against whom [the plaintiff] received its judgment and arguing that no rule of civil procedure in Tennessee permits [the plaintiff] to amend a complaint to add an additional Defendant after judgment has been rendered and is final. Further, [OSC] argues that [the plaintiff's] motion, seeking in essence to pierce the corporate veil of [OSC], is governed by the laws of the jurisdiction where the corporation was chartered, i.e., Panama, and [the plaintiff] has failed to cite any Panamanian law indicating that Barbour is individually liable for debts of [OSC].

The Trial Court heard the [plaintiff's] motion on February 19, 1999, and found that the motion was not well-taken and should be denied.

The Court found that [Barbour] was never made a party to the case, final judgment was entered against [OSC] on March 26, 1997, no appeal was taken, and the judgment became final on April 26, 1997. The Trial Court correctly declined to grant the Writ [o]f Execution against Barbour since Barbour was not a judgment debtor in that court. The Trial Court also denied the alternative relief requested to amend the complaint to add Barbour as a Defendant. The Trial Court's basis for such denial was that [the plaintiff] did not attempt to make Barbour a party in the Tennessee suit to domesticate the foreign judgment until long after the Tennessee judgment became final on April 26, 1997. It was the opinion of the Trial Court that if [the plaintiff] now wishes to proceed against [Barbour] in an attempt to pierce the corporate veil, a separate action must be commenced by filing a separate complaint against [Barbour] on that claim. We agree.

*Oceanics*, 1999 WL 1059678, at *1-*2 (footnote omitted). In affirming the judgment of the trial court in the earlier litigation between the plaintiff and OSC, this court stated the following in our opinion released November 19, 1999:

We agree with the Trial Court that [the plaintiff's] remedy is to pursue its claims against [Barbour] in a separate suit against [Barbour] to attempt to pierce the corporate veil.

*Id.* at *4.

II.

On April 19, 1999, while ***Oceanics Schs., Inc. v. Operation Sea Cruise, Inc.*** was still pending before us, the plaintiff filed the instant action against Barbour, seeking to pierce the corporate veil of OSC. In the complaint, the plaintiff alleged, *inter alia*, that Barbour was the alter ego of OSC, and that, this being the case, the plaintiff should be allowed to enforce the OSC judgment against Barbour. Subsequently, the trial court granted the plaintiff's second motion for partial summary judgment on the issue of the statute of limitations, finding that the applicable period of limitations in this case is ten years from the date of the circuit court's domestication of the Portuguese judgment, pursuant to Tenn. Code Ann. § 28-3-110 (2000).[4] In so holding, the trial court rejected Barbour's argument that the plaintiff's suit is subject to the six-year period of limitations

_____

[4]Tenn. Code Ann. § 28-3-110 provides, in pertinent part, as follows:

The following actions shall be commenced within ten (10) years after the cause of action accrued: . . . (2) Actions on judgments and decrees of courts of record of this or any other state or government; . . .

-4-

set forth in Tenn. Code Ann. § 28-3-109 (2000) and/or the three-year statute of limitations found at Tenn. Code Ann. § 28-3-105 (2000), as measured from the accrual of the underlying causes of action supporting the OSC judgment. If Barbour is correct in his assertion, the claim against him in the instant case is obviously time-barred.

In framing the issues for trial, the court below concluded that the only issue properly before it was whether Barbour is the alter ego of OSC. Consequently, Barbour was not allowed to present evidence pertaining to the other defenses raised by him in his answer. He was limited to defending the plaintiff's allegation that he was the alter ego of OSC. Following a bench trial, the court, in its "Findings of Fact and Conclusions of Law," held that Barbour was the alter ego of OSC and "should be personally bound on the judgment in favor of the Plaintiff against OSC." Barbour appeals this judgment, raising a number of issues for our consideration.

### III.

In this non-jury case, our review is *de novo* upon the record of the trial court with a presumption of correctness as to the trial court's findings of fact "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). No such presumption of correctness attaches to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The issue of the credibility of witnesses is peculiarly within the realm of the trial court and its determinations with respect to witness credibility are given great weight on appeal. *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn. Ct. App. 1987).

### IV.

Barbour contends that the evidence preponderates against the trial court's determination that he is the alter ego of OSC. As a consequence of this finding, the trial court pierced the corporate veil and entered judgment against Barbour for $2,426,845.90, the amount of the OSC judgment, including interest on the Portuguese judgment, as domesticated in the circuit court proceeding. In order to judge the propriety of the trial court's judgment in the context of Barbour's preponderance-of-the-evidence argument, we must examine the law in Tennessee regarding the issue of piercing the corporate veil.

A corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors. *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). A corporation's separate identity may be disregarded or "pierced," however, "upon a showing that it is a sham or a dummy or *where necessary to accomplish justice*." *Id.* (emphasis added). A corporation's identity should be disregarded "with great caution and not precipitately." *Id.* The determination of whether to disregard the corporate fiction depends on the special circumstances of each case, and "the matter is particularly within the province of the trial court." *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985). "Generally, no one factor is conclusive in determining whether or not to disregard a corporate

entity;" rather, the courts typically rely upon a combination of factors in deciding such an issue. *Schlater*, 833 S.W.2d at 925 (citing 18 Am. Jur. 2d *Corporations* § 48, p. 847, n.41-42 (1985)). The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief. *Schlater*, 833 S.W.2d at 925.

In addressing the issue of piercing the corporate veil, this court has relied upon the factors set forth in *Federal Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386 (E.D. Tenn. 1984):

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Id.* at 397 (citations omitted), *cited in* **Greene v. Hill Home Dev. Inc.**, CA No. 03A01-9210-CH-00369, 1993 WL 17115, at *2 (Tenn. Ct. App. E.S., filed Jan. 28, 1993). It is not necessary that all of these factors weigh in a plaintiff's favor in order to justify the piercing of the corporate veil. ***In re B&L Laboratories, Inc.***, 62 B.R. 494, 504 (Bankr. M.D. Tenn. 1986) ("All of these factors need not be present to justify disregard of the corporate boundaries; however, it is necessary that substantial equities favor the aggressor party.").

In the instant case, the trial court made several findings of fact relative to these factors. The court found that Barbour was the 100% shareholder of OSC and that he was elected secretary-treasurer, general manager and operations manager at the first meeting of OSC's board of directors. The court noted that, while the minutes of that meeting reflect that Barbour was to fill those positions until successors were chosen, there is no indication in the subsequent minutes that anyone succeeded Barbour as general manager or operations manager. The trial court also found that Barbour controlled the operations of OSC either directly or through his agent, John Blue.

With respect to OSC's finances, the trial court found that Barbour used his own personal funds to purchase the *Antarna*. Both OSC and Barbour were listed as insured parties in the *Antarna*'s insurance policy. The refurbishment of the *Antarna* in Italy as well as the resolution of a customs' claim for $80,000 were accomplished by way of payments by Barbour through "purported personal loan[s]," though no documentation of these loans exists. The sale of the *Antarna* in 1978 yielded $800,000, which was transferred to Barbour's personal bank account. However, the trial court noted that no documents or records pertaining to Barbour's security interest or the transfer of the funds were produced. The trial court pointed out that Barbour claimed the legal fees of OSC as his own debt in his divorce litigation.

The trial court found that, (1) at all relevant times, OSC's corporate office was Barbour's private residence; (2) the *Antarna* was OSC's principal asset; (3) its sale effectively liquidated the corporation; and (4) the "transfer of the proceeds from the sale of *Antarna* to Barbour's personal account rendered OSC without assets."

The trial court further found that "[a]t all material times, OSC was undercapitalized." While a mere $2,000 was paid into the corporation as capital, the alleged debt OSC owed to Barbour was in excess of $800,000. Essentially all of OSC's funds came through "loans" from Barbour.[5] In addition, the court noted that OSC "failed to completely observe corporate formalities." With respect to corporate records, the court found the following:

> There are records of only four meetings of shareholders and six meetings of the board of directors. There are reasons given, such as the passage of time and the death of an individual, which explain satisfactorily the absence of records.

Barbour points to evidence of facts supporting his position that he is not the alter ego of OSC such as would justify the piercing of the corporate veil. However, after reviewing all of the evidence – in the context of the *Allen* factors – we cannot say that the evidence preponderates against the trial court's dual determinations (1) that Barbour is the alter ego of OSC and, as a consequence of this finding, (2) that the plaintiff is entitled to pierce the corporate veil of OSC and cast Barbour in judgment based upon the OSC judgment. Since the piercing of the corporate veil is a "matter particularly within the province of the trial court," *Electric Power Bd.*, 691 S.W.2d at 526, we conclude that there is no basis for disagreeing with the trial court's explicit finding that the piercing of the corporate veil was "necessary to accomplish justice." *Schlater*, 833 S.W.2d at 925. Giving

---

[5] *See* *In re B&L Laboratories, Inc.*, 62 B.R. 494, 509 (Bankr. M.D. Tenn. 1986) ("A debt to equity ratio greater than 4:1 is sometimes cited as evidence that the corporation was 'financed' by the creation of debt.").

due consideration to the trial court's credibility determinations,[6] we conclude that this evidentiary issue must be resolved against Barbour.

V.

Barbour also contends that the trial court erred in treating the plaintiff's complaint against Barbour in the instant case as an action to enforce the judgment the plaintiff previously obtained against OSC. Barbour argues that, as he was not a party to the previous judgment, that judgment cannot be enforced against him personally and that, therefore, the complaint cannot be considered an "[a]ction on [the] judgment[]." *See* Tenn. Code Ann. § 28-3-110.[7] According to Barbour, if the complaint cannot be viewed as an action on the OSC judgment, then the ten-year statute of limitations pertaining to such actions is not applicable to this case and the plaintiff's action against Barbour is barred by the statutes of limitations pertaining to the causes of action originally pursued by the plaintiff in the Portuguese court.

We begin our analysis by noting a fallacy in Barbour's argument. While the trial court, in its order granting partial summary judgment to the plaintiff, did state that the plaintiff's claim was "essentially an action to execute," we believe the court used the word "execute" to mean an action on the judgment. In the previous appeal of the litigation between the plaintiff and OSC, this court affirmed the trial court's refusal "to order execution against Barbour for the corporate debt of [OSC]." *Oceanics*, 1999 WL 1059678, at *3. However, we went on to agree with the trial court that the plaintiff's proper remedy was to "pursue its claims against [Barbour] in a separate suit against [Barbour] to attempt to pierce the corporate veil." *Id.* at *4. The plaintiff did exactly that. We must now determine whether the plaintiff's suit to pierce the corporate veil was timely filed. In other words, we must decide whether such a claim can be pursued in the context of an action on a judgment – a judgment against an entity whose corporate veil the plaintiff seeks to pierce.

VI.

Tenn. Code Ann. § 28-3-110 provides, in pertinent part, as follows:

> The following actions shall be commenced within ten (10) years after the cause of action accrued:

---

[6]Many of the trial court's factual findings were based upon Barbour's own testimony.

[7]See footnote 4 to this opinion.

* * *

> (2) Actions on judgments and decrees of courts of record of this or
> any other state or government; ....

The plaintiff filed a complaint to domesticate the Portuguese judgment in the Circuit Court for Knox County on May 10, 1995. Process for OSC was served on Barbour. On March 26, 1997, the Circuit Court entered a judgment domesticating the foreign judgment pursuant to the provisions of the Uniform Enforcement of Foreign Judgments Act, Tenn. Code Ann. § 26-6-101, *et seq.* (2000). With the passage of 30 days – there being no appeal – that judgment became final and enforceable. If the action brought by the plaintiff in the instant case is to be treated as an action on that judgment, then the plaintiff would have had ten years from the date of entry of the domesticated judgment to bring such an action. If this be the context in which the plaintiff's action should be evaluated, this suit – having been filed on April 19, 1999 – was obviously filed in a timely manner.

We are not aware of any Tennessee appellate court decisions dealing with a factual scenario where, as here, a party first obtains a judgment against a corporation and then later files suit on that judgment against the corporation's sole stockholder in an attempt to pierce the corporate veil and thereby cast the stockholder in judgment. There are, however, several cases from other jurisdictions that have dealt with a factual pattern similar, in general terms, to the one now before us. We find each of these cases helpful in resolving the issues before us in the instant case.

In *Matthews Construction Co., Inc. v. Rosen*, 796 S.W.2d 692 (Tex. 1990), the Supreme Court of Texas affirmed a trial court's judgment entered on a jury verdict against the determined-to-be alter ego of the corporation, based upon a judgment that had been rendered against the corporation at an earlier time. *Id*. at 694. In doing so, the High Court reversed the judgment of the intermediate appellate court in Texas, which court had held that the suit against the alter ego filed in February, 1984, was outside the four-year statute of limitations in Texas applicable to breach of contract actions. *Id*. at 693. In *Matthews*, the Supreme Court of Texas held that even though the underlying breach of contract had occurred in 1979 – more than four years before the alter ego suit was filed – the latter action against the stockholder was timely filed because "once Matthews filed suit against [the corporation] in June 1979, limitations was tolled as to [the corporation's] alter ego until final judgment [against the corporation in July 1982]." *Id*. at 694. Since these three years were excluded from the four-year period of limitations under the court's rationale, the High Court reasoned that the suit against the alter ego had been timely filed under the four-year breach of contract statute of limitations. *Id*. While *Matthews* does not involve the precise issue now under discussion, *i.e.*,

-9-

whether the instant case is legitimately construed as an action on a judgment,[8] the court's approach in that case to a suit against the corporation's alter ego based upon an earlier-obtained judgment against the corporation is helpful in resolving the case before us.

The procedural history of the litigation in ***Matthews*** is generally similar to that of the instant case:

> This cause involves piercing the corporate veil and the application of limitations. [Matthews] sued [Houston Pipe] for breach of contract and secured a judgment against Houston Pipe in July 1982. Because Matthews was unable to collect on that judgment, it filed suit in February 1984 against Harvey Rosen, the president and sole shareholder of Houston Pipe. Matthews contended that Rosen had stripped Houston Pipe of its assets in order to avoid paying the judgment. A jury found that Houston Pipe was the alter ego of Rosen and that Rosen had operated the company as a sham to perpetrate a fraud on Matthews; . . . . The trial court . . . rendered judgment for Matthews *for . . . , the amount owing on the prior judgment*.

***Id***. at 692-93 (emphasis added).

The court in ***Matthews*** noted that a suit against an alter ego of a corporation is based upon "equitable considerations," *id*. at 693, and also pointed out that such a suit does not amount to "a separate and independent cause of action." ***Id***. at 693, n.1. In the course of its opinion, the Supreme Court of Texas made remarks indicating that a suit to pierce the corporate veil in Texas is functionally similar to, and predicated on the same rationale as that of, such an action in Tennessee:

> When the corporate form is used as an essentially unfair device – when it is used as a sham – courts may act in equity and disregard the usual rules of law in order to avoid an inequitable result. Thus, in

---

[8]In ***Matthews***, the Supreme Court of Texas explicitly stated that it did not have to decide if the Texas period of limitations applicable to suits to enforce judgments was applicable:

> In some jurisdictions, the limitations period for such an alter ego suit would be the same as for a suit to enforce a judgment. In Texas, that period is ten years. However, because Matthews' suit against [the alter ego] is within the 4-year statute of limitations, we need not now consider whether the limitations period should be ten years instead of four.

***Id***. at 694, n.3 (citations omitted).

> *Castleberry* [*v. Branscum,* 721 S.W.2d 270 (Tex. 1986)], the court disregarded the usual rules concerning the separate nature of corporate entities, and in *Gentry* [*v. Credit Plan Corp*., 528 S.W.2d 571 (Tex. 1975)], the court disregarded the usual rules concerning limitations. In both instances the court took a "flexible" approach and focused on doing equity in order to prevent an unfair abuse of the corporate form.
>
> A statute of limitations serves primarily to compel the assertion of a cause of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available. It prevents the bringing of stale claims. Matthews' claim against Houston Pipe is not stale because Matthews has already pursued that claim to judgment. Neither is Matthews' claim against Rosen stale because Rosen is simply Houston Pipe's "other self" – he is not a legally separate entity from Houston Pipe.

*Id*. at 693-94 (citations omitted). Quoting from its *Gentry* decision, the Supreme Court of Texas made the following statement that is particularly pertinent to the case before us on this appeal:

> The purpose of the court in cases of this nature is to prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice, and that purpose should not be thwarted by adherence to any particular theory of liability.

*Id*. at 693, quoting from *Gentry v. Credit Plan Corp*., 528 S.W.2d 571, 575 (Tex. 1975).

In *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 608 F. Supp. 1261 (S.D. N.Y. 1985), a federal court had to decide, in a diversity action controlled by New York law, whether an alter ego suit was subject to the statute of limitations applicable to the underlying cause of action against the corporation or the statute of limitations pertaining to suits to enforce judgments. *Id*. at 1264. In *Passalacqua*, the plaintiff had obtained a judgment against a corporation, apparently based on fraud. *Id*. at 1263. It then sued a number of individuals and entities based, at least in part, "on a theory of piercing the corporate veil" as to certain of the defendants. *Id*. In denying the defendants' motion for summary judgment, the court concluded that the plaintiff's suit on a theory of piercing the corporate veil was subject to the twenty-year statute of limitations in New York pertaining to the enforcement of judgments:

The statute of limitations in New York for actions to enforce a judgment is twenty years. This action was commenced within the twenty-year period. Defendant contends that this statute of limitations is not appropriate for an action seeking to pierce the corporate veil and that the statute of limitations for the underlying action must be used. . . . A plaintiff may attempt to enforce a judgment against individuals or corporations allegedly controlling the judgment debtor using a theory of piercing the corporate veil. The defendant, . . . , contends that the acts comprising the claims which would permit the plaintiff to pierce the corporate veil are within the scope of the six-year statute of limitations for fraud actions, . . . . Under the alter ego and instrumentality theories the corporation and those who have controlled the corporation are treated as but one entity. Thus, the statute of limitations applicable to the corporation should apply to those who are using the corporation as an instrumentality. The action accrued against both the corporation and any alter egos when the judgment was entered. The action to enforce the money judgment is therefore timely.

*Id*. at 1264 (citations omitted). Addressing the alter ego claim, the court noted that "liability is imposed to reach an equitable result." *Id*. at 1265, n.2.

The rationale of *Passalacqua* was followed in the case of *Belleville v. Hanby*, 152 Mich. App. 548, 394 N.W.2d 412 (Mich. App. 1986). In *Belleville*, the Court of Appeals of Michigan held, in an alter ego case premised on a personal injury judgment, that the Michigan ten-year period of limitations governing the enforcement of judgments was applicable to the plaintiff's suit:

We believe the reasoning of *Passalacqua* should be applied to the instant case. The lawsuit filed by the plaintiffs against [the alleged alter egos] was not one principally geared to establishing a right to recover for a personal injury. Rather, having already obtained a judgment against the corporation on their personal injury claim, plaintiffs sought, through the lawsuit at issue here, to establish that the judgment obtained against the corporation was also a judgment against the defendants in their individual capacities. The only issues presented in this cause of action are those concerned with piercing the corporate veil and establishing that defendants were the alter egos of the corporation. At no time did plaintiffs raise the issue typically associated with a personal injury claim, . . . . Thus, in its most basic sense, this was an action to establish an identity of interest between these defendants and [the corporation]. Viewed in this light, we

> believe the applicable statute of limitation[s] is . . . ten years from the time of rendition of the judgment.

*Id*. 152 Mich. App. at 552-53; 394 N.W.2d at 414-15 (citations omitted).

In the instant case, the plaintiff successfully established that Barbour and OSC are one and the same. Borrowing language used in ***Matthews***, it is now clear that Barbour is simply OSC's "other self." ***Matthews***, 796 S.W.2d at 694. We agree with the reasoning in ***Passalacqua***, which means, in the instant case, that once the Portuguese judgment was domesticated in Tennessee, it "accrued against both the corporation and any alter egos." ***Passalacqua***, 608 F. Supp. at 1264.

A suit against an alter ego in which the plaintiff seeks to pierce the corporate veil in connection with a previously-obtained judgment against a corporation is not "a separate and independent cause of action." ***Matthews***, 796 S.W.2d at 693, n.1. When the plaintiff in the instant case obtained and thereafter domesticated a judgment against OSC, it also did so as to any of OSC's alter egos. ***Passalacqua***, 608 F. Supp. at 1264. In the case at bar, the focus is clearly on the domesticated judgment, not on the cause or causes of action underlying the original suit in Portugal. This being the case, it is inescapable that the plaintiff's suit in which it seeks to pierce the corporate veil and impose the OSC judgment on Barbour as OSC's alter ego is controlled by the ten-year statute of limitations addressing actions on judgments, Tenn. Code Ann. § 28-3-110. Once the trial court determined that Barbour is the alter ego of OSC, the judgment against the corporation is properly construed as a judgment against Barbour as well. Barbour's argument on the issue of the statute of limitations is found to be without merit.

VII.

Barbour contends that when the trial court allowed the plaintiff to assert the OSC judgment against a non-party, *i.e.*, Barbour, it improperly permitted the plaintiff to utilize a doctrine not recognized in Tennessee – offensive non-mutual collateral estoppel[9] – against him. Barbour also claims that the trial court erred when it refused to permit him to assert defenses of no debt due the plaintiff from OSC, due process, laches and the fact that the OSC judgment was based upon an *in rem* proceeding in Portugal and was not based upon *in personam* jurisdiction over OSC. He also argues that there was a failure of proof on the part of the plaintiff in that it failed to prove applicable Panamanian law.

---

[9] *See **Gann v. International Harvester Co**.*, 712 S.W.2d 100, 101 (Tenn. 1986); ***Beaty v. McGraw***, 15 S.W.3d 819, 825 (Tenn. Ct. App. 1998).

Barbour's multi-faceted attempt to upset the OSC judgment and thereby bar its imposition upon him misses the mark and misconstrues what this litigation is about and, more importantly, what it is not about. Barbour's other self – OSC – had ample due process and a full opportunity to litigate the pertinent issues, first in the protracted litigation in Portugal and, later, as to the Portuguese judgment in the domestication action in circuit court. We now have before us a final and enforceable *Tennessee* judgment against OSC. Since the trial court has determined that Barbour is OSC's other self and since we find no error in that finding, there is now in place a final and enforceable *Tennessee* judgment against Barbour. He is not a legally separate entity from OSC. *See Matthews*, 796 S.W.2d at 694. *See also Passalacqua*, 608 F. Supp. at 1264 (". . . the corporation and those who have controlled the corporation are treated as one entity.").

We find no merit in Barbour's assertion that Panamanian law is relevant on the question of whether the corporate veil can be pierced in this case. We are dealing now with a Tennessee judgment. The law of Tennessee is applicable in determining the efficacy and parameters of the piercing of the corporate veil theory.

We also find no merit in Barbour's argument that the plaintiff unreasonably delayed in pursuing the domestication of the Portuguese judgment and the filing of the instant action against Barbour. He makes this argument in support of his assertion that the present action should be barred by the doctrine of laches. The record supports the following assertion of the plaintiff:

> The passage of time complained of at length in Barbour's Brief can be attributed to Barbour himself. From the date of the judgment obtained by [the plaintiff] in Portugal through 1993, OSC and [the plaintiff] were involved in post-judgment litigation initiated by OSC in the Portuguese courts. OSC appealed the judgment to the Supremo Tribunal de Justica in Lisbon, the highest court in Portugal, which dismissed the appeal with prejudice against OSC on April 29,1993. From 1993 to 1995, the judgment in the Azores went through a process to become a final Portuguese judgment and was being consularized for domestication in Tennessee. [The plaintiff] then filed its Complaint to domesticate the judgment in the Circuit Court for Knox County, Tennessee.

We find the issue of laches adverse to Barbour.

Barbour raises a number of issues pertaining to the exclusion, in whole or in part, of certain exhibits. Suffice it to say that we find no error in the trial court's rulings with respect to these exhibits. Certainly, we cannot say that any of these rulings, viewed singularly or in a cumulative

-14-

manner, even if erroneous, involve a substantial right that more probably than not affected the outcome of this case. *See* Tenn. R. App. P. 36 (b).

## VIII.

Finally, Barbour claims that the plaintiff is guilty of unclean hands in failing to advise the circuit court of a payment from a third party that, according to Barbour, should have been credited against the Portuguese judgment. He claims that the failure of the plaintiff to disclose this information to the circuit court should bar it from the equitable relief it now seeks.

The record reflects that after the plaintiff secured its judgment in Portugal, it released its lien on the *Antarna* after reaching a settlement with the new owner of the vessel. In June, 1987, the plaintiff received approximately $287,500 from OSC's transferee in consideration of the plaintiff releasing its lien and allowing the *Antarna* to continue in the unencumbered ownership of its new owner. The plaintiff in its brief concedes that "it is possible that this payment may have an effect on the judgment amount."

We believe, in fairness to Barbour, that he is entitled to a credit against the amount of the *Portuguese judgment* for the payment made by the other entity to the plaintiff. On remand, the trial court is directed to (1) make an appropriate computation crediting the amount of the Portuguese judgment with the payment of approximately $287,500; (2) re-calculate the interest on that judgment as finally domesticated in Tennessee; and (3) modify the judgment amount as to Barbour.

## IX.

The judgment of the trial court is affirmed, except the amount of the judgment is modified to an extent to be determined by the trial court on remand pursuant to the instructions set forth in Section VIII of this opinion. Costs on appeal are taxed to the appellant Clifford E. Barbour, Jr. Case remanded to the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE

-15-