IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 4, 2004 Session

## GREGOR NADLER v. MOUNTAIN VALLEY CHAPEL BUSINESS TRUST, ET AL.

### Appeal from the Chancery Court for Sevier County
No. 01-4-166     Telford E. Forgety, Jr., Chancellor

No. E2003-00848-COA-R3-CV - FILED JUNE 30, 2004

Gregor Nadler ("the plaintiff") took a default judgment in the amount of $68,270.98 against Gerald H. Lucas ("Mr. Lucas") in a Florida proceeding. The judgment survived Mr. Lucas's subsequent bankruptcy filing. The plaintiff domesticated his judgment in Tennessee and then filed suit against, *inter alia*, the Mountain Valley Chapel Business Trust and Mr. Lucas, claiming (1) that Mr. Lucas had engaged in a fraudulent conveyance when he formed the trust and (2) that the trust was his alter ego. Following a bench trial, the court dismissed the plaintiff's complaint. From this judgment, the plaintiff appeals, challenging the trial court's rulings with respect to his fraudulent conveyance and alter ego claims. In addition, the plaintiff raises an evidentiary issue. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Scott D. Hall, Sevierville, Tennessee, for the appellant, Gregor Nadler.

Brian T. Mansfield, Sevierville, Tennessee, for the appellees, Mountain Valley Chapel Business Trust, Gerald H. Lucas, Sharon M. Lucas, Gerald Richard Lucas, and Timothy Barton Lucas.

### OPINION

I.

On August 18, 1988, the plaintiff obtained a default judgment in the state of Florida against Mr. Lucas in the amount of $68,270.98; the judgment was premised upon a claim of fraudulent conduct. Sometime in 1989, Mr. Lucas filed for bankruptcy protection. Because the judgment was based upon Mr. Lucas' fraud, it was not discharged in bankruptcy.

Thereafter, Mr. Lucas moved to Tennessee along with his wife. In July, 1992, Mr. Lucas purchased the Mountain Valley Chapel, a wedding chapel business located in Sevier County. The purchase was accomplished through Mr. Lucas's execution of a promissory note to the seller. For approximately one year, Mr. Lucas operated the business as a sole proprietorship.

On July 27, 1993, Mr. Lucas conveyed the business to the Mountain Valley Chapel Business Trust ("the Trust"). By the terms of the Trust, Mr. Lucas was the trustee, and the beneficiaries of the Trust were his wife, Sharon M. Lucas, and his two sons, Gerald Richard Lucas and Timothy Barton Lucas. At the time of the transfer, the Trust had few assets and substantial liabilities. Mr. Lucas, as trustee, had control over the business, but it was Sharon M. Lucas who essentially ran the business, doing "a little bit of everything there is to do in the wedding chapel business other than actually performing the weddings."

In January, 2001, the plaintiff domesticated the Florida judgment against Mr. Lucas in Tennessee. Three months later, the plaintiff filed the present action, claiming that Mr. Lucas's formation of the trust was a fraudulent conveyance used "to hinder collection of debts by his personal creditors." The plaintiff later amended his complaint to include an allegation that the Trust is the alter ego of Mr. Lucas.

A bench trial followed in November, 2002. At the conclusion of the trial, the court dismissed the plaintiff's claims, finding that there was insufficient evidence to sustain a claim of a fraudulent conveyance and that the doctrine of piercing the corporate veil in reverse in a factual scenario such as the one present in the case at bar has not been recognized in the appellate decisions of this state. From this judgment, the plaintiff appeals.

II.

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual findings – one that we must honor "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

III.

A.

The plaintiff first argues that the trial court erred in failing to find that the creation of the Trust was a fraudulent conveyance. We agree with the trial court.

A conveyance is considered fraudulent in Tennessee if it is made "[w]ithout a fair consideration, leaving the grantor insolvent; or . . . [m]ade with actual intent to hinder, delay or

defraud creditors." ***Hicks v. Whiting***, 149 Tenn. 411, 444, 258 S.W. 784, 794 (1924). A determination of whether a conveyance is fraudulent is dependent upon the facts and circumstances of each case; such fraud is typically proven by circumstantial evidence. ***Macon Bank & Trust Co. v. Holland***, 715 S.W.2d 347, 349 (Tenn. Ct. App. 1986). Such circumstantial indicators of fraud are often termed as "badge[s] of fraud" and have been described as "any fact[s] that throw[] suspicion on the transaction and call[] for an explanation." ***Id.*** More specifically, the courts in Tennessee have held that the following are considered badges of fraud:

> 1. The transferor is in a precarious financial condition.
>
> 2. The transferor knew there was or soon would be a large money judgment rendered against the transferor.
>
> 3. Inadequate consideration was given for the transfer.
>
> 4. Secrecy or haste existed in carrying out the transfer.
>
> 5. A family or friendship relationship existed between the transferor and the transferee(s).
>
> 6. The transfer included all or substantially all of the transferor's nonexempt property.
>
> 7. The transferor retained a life estate or other interest in the property transferred.
>
> 8. The transferor failed to produce available evidence explaining or rebutting a suspicious transaction.
>
> 9. There is a lack of innocent purpose or use for the transfer.

***Stevenson v. Hicks (In re Hicks)***, 176 B.R. 466, 470 (Bankr. W.D. Tenn. 1995) (citing several Tennessee appellate decisions).

The presence of one or more of the badges of fraud gives rise to a presumption of fraud and consequently shifts the burden of disproving fraud to the defendant. *See* ***Macon Bank***, 715 S.W.2d at 349.

In the instant case, the trial court found, in essence, that even if one or more badge of fraud existed in this case, nevertheless the plaintiff had failed to prove that Mr. Lucas had conveyed a valuable asset when the Trust was formed. The trial court, in so holding, pointed to the fact that the liabilities of the Trust amounted to more than its assets, thereby leaving nothing for the plaintiff to

recover even if he could prove that the transfer was indeed fraudulent.  More specifically, the trial court found as follows:

> [W]hat you have here was an asset on the one hand and you had a corresponding liability on the other hand, and so when it was transferred into the [T]rust, it's only the difference between those two that could ever be considered to have been the transfer of an asset without consideration in any event.  It's only to the extent of the difference between the asset and the corresponding liability that there was a transfer without consideration in any event.  Then the business went to work, the parties went to work, including Mrs. Lucas, by the way.  And the business itself paid off the purchase price over a period of years, over a period of time.
>
> The [T]rust was formed in 1993 and the business carried on for some seven years thereafter until this suit was filed either trying to reverse pierce or have the conveyance of the business set aside.  During that period of time, Mrs. Lucas, in reliance upon this [T]rust, good, bad, or indifferent, no suit was filed, Mrs. Lucas contributed her time and effort from all appearances of the record at least to an equal degree as did Mr. Lucas.  To whatever extent the business has grown or appreciated or become worth more from that which it was worth when the [T]rust was created, that is whatever the difference between the value of the asset and the value of the corresponding liability, whatever that difference was in 1993, the difference between that number, that net number, and whatever it's worth today involves Mrs. Lucas.  Mrs. Lucas has certainly contributed to that.
>
> The Court cannot find otherwise, and after seven years – again, it might have been different if [the plaintiff] had done this in 1993, brought this suit in 1993 or 1994, or sometime before seven years, it might well have been different.  Mrs. Lucas, the Court must find and has found, is innocent as far as this record is concerned.
>
> But those are the facts that we find, and I, therefore, accordingly cannot sustain the claim to set aside the transfer of the business or its assets . . . .  Accordingly, the complaint will be dismissed. . . .

Our review of the record persuades us that the evidence does not preponderate against the trial court's findings.  The evidence supports a finding that, at the time of the Trust's formation, its liabilities exceeded its assets.  Accordingly, there were no net assets for the plaintiff to recover if the conveyance was in fact fraudulent.  Furthermore, the evidence is clear that any growth in the business or appreciation in its assets over the years is attributable to the efforts of Mrs. Lucas.  It

would therefore be inequitable to strip the Trust of any assets it had obtained after its formation as a result of the efforts of Mrs. Lucas, who, as the trial court found, is an innocent party.

With respect to the trial court's comment that the situation "might have been different" if the plaintiff had filed suit shortly after the Trust was formed, we respectfully disagree with the conclusion that this would have made any difference. Regardless of when the plaintiff filed his action, the fact remains that the subject business had no value at the time of transfer. Its debts exceeded its assets. Under these circumstances, a transfer with no consideration other than the assumption of the debts is hardly a transfer "without a fair consideration." We therefore affirm the trial court's decision with respect to the fraudulent conveyance issue.

B.

The plaintiff next contends that the trial court erred in refusing to employ the doctrine of "reverse piercing" of the corporate veil to get to the assets of the Trust. Again, we agree with the trial court.

A corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors. *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). A corporation's separate identity may be disregarded or "pierced," however, "upon a showing that it is a sham or a dummy or where necessary to accomplish justice." *Id.* Courts are instructed to disregard a corporation's identity "with great caution and not precipitately." *Id.* In determining whether to disregard the corporate fiction, courts must examine the special circumstances of each case. *Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985). The burden is on the party seeking to pierce the corporate veil to prove facts sufficient to warrant such an action. *Schlater*, 833 S.W.2d at 925. Generally speaking, these principles of corporate law would apply with equal force when, as here, a trust rather than a corporation is involved.

While creditors seeking to avail themselves of the piercing concept are usually creditors of the corporation attempting to pierce the veil of the corporation in order to reach the assets of the individual or individuals in control of the corporation, creditors sometimes seek to "reverse pierce" or "hold a corporation accountable for actions of its shareholders." *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 866-67 n.12 (Tenn. Ct. App. 2000) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). While the Tennessee Supreme Court has recognized the concept of reverse piercing, it did so in the context of a parent/subsidiary relationship, as opposed to the corporation/shareholder, or trust/beneficiary relationship. *See Cont'l Bankers Life Ins. Co. of the South v. Bank of Alamo*, 578 S.W.2d 625, 632-33 (Tenn. 1979). While this court has addressed the issue of reverse piercing in the corporation/shareholder context, we have never adopted it. *See Reagan v. Connelly*, No. E2000-00451-COA-R3-CV, 2000 WL 1661524, at *6-*7 (Tenn. Ct. App. E.S., filed November 6, 2000); *S.E.A., Inc. v. Southside Leasing Co.*, No. E2000-00631-COA-R3-CV, 2000 WL 1449852, at *10 (Tenn. Ct. App. E.S., filed September 29, 2000); *Mfrs. Consolidation*, 42 S.W.3d at 866-67.

In reversing a trial court's decision to permit reverse piercing, we held in ***Reagan*** as follows:

> We are of the opinion that disregarding the Corporation's separate identity in this case is improper. Not only are there significant problems inherent in the reverse piercing concept in the corporation/shareholder context, we find it particularly troubling where, as here, a plaintiff is attempting to reach the assets of the corporation to satisfy the debt of one who, as we have already found, is not even a shareholder. Thus, even should the Tennessee Supreme Court adopt the theory of reverse piercing in the corporation/shareholder context – a decision that must await another day – the facts of the instant case do not fall within the elements of such a cause of action.

***Reagan***, 2000 WL 1661524, at *7.

In the instant case, the plaintiff is attempting to employ reverse piercing to reach the assets of the Trust. Our initial response to his argument is the same as our holding in ***Reagan***: the Tennessee Supreme Court has never recognized reverse piercing in a corporation/shareholder situation or, as here, in a trust/beneficiary context. As a further response to this argument, we note that the plaintiff is not a beneficiary under the Trust, making his argument all the more tenuous. Accordingly, we find that the evidence does not preponderate against the trial court's refusal to apply the concept of reverse piercing in the instant case.

C.

Finally, the plaintiff argues that the trial court erred in refusing to receive *as an exhibit* the deposition testimony of Mr. Lucas. We agree with the trial court's decision not to receive this deposition into evidence as an exhibit.

At trial, the plaintiff moved the trial court to admit into evidence – as an exhibit – the deposition testimony of Mr. Lucas. An objection by counsel for Mr. Lucas to the introduction of the whole deposition as an exhibit was sustained. Before the conclusion of the trial, the plaintiff made an offer of proof, identifying *four* depositions of Mr. Lucas that he would have submitted into evidence had he been given an opportunity to do so. On appeal, the plaintiff contends that he had attempted to move the depositions into evidence in their entirety for the purpose of impeaching Mr. Lucas. In addition, the plaintiff claims that he was entitled to introduce the entire depositions under Tenn. R. Civ. P. 32.01(4).

We begin by pointing out that nothing in the record indicates that the trial court ever prevented the plaintiff from using Mr. Lucas's prior deposition testimony for impeachment purposes. The trial court only prevented the plaintiff from introducing the depositions in their entirety *as an exhibit*. Because Mr. Lucas is a party to this action, any prior inconsistent statements made in his

deposition testimony "are admissible both for the purpose of impeachment and as substantive evidence because they are admissions by a party-opponent under Tenn. R. Evid. 803(1.2)." ***Burgess v. Harley***, 934 S.W.2d 58, 68 (Tenn. Ct. App. 1996). Accordingly, the plaintiff could have proved these inconsistent *statements*, but there is no rule or other authority in this state that would allow the plaintiff to introduce the depositions in their entirety into evidence for impeachment purposes.

The plaintiff contends, however, that because the proffered deposition testimony is nothing more than a statement by a party opponent, it should be admissible as an exception to the hearsay rule under Tenn. R. Evid. 803(1.2). There are several problems with this argument. First, while party admissions are "not excluded by the hearsay rule," *see* Tenn. R. Evid. 803, that does not mean that each and every statement by a party opponent is admissible. For example, such statements must still be relevant, under Tenn. R. Evid. 401. Without question, the deposition testimony of Mr. Lucas contained statements that would not be relevant to the issues at trial. *See* Tenn. R. Evid. 402. Moreover, there is no guarantee that such deposition testimony does not contain multiple hearsay, for which there might be no hearsay exception. Simply advancing the position that such deposition testimony amounts to party admissions is not enough to warrant the introduction of the entire deposition into evidence. It is not proper to submit an entire deposition containing both admissible and non-admissible evidence for the purpose of putting the admissible evidence before the trier of fact.

The plaintiff also contends that the deposition testimony should have been admitted under Tenn. R. Civ. P. 32.01(4), which provides, in pertinent part, as follows:

> If only part of a deposition is offered in evidence by a party, an adverse party may require the offering party to introduce any other part *which ought in fairness to be considered with the part introduced*, and any party may introduce *any other parts*.

(Emphasis added). This issue came up in the following way. Prior to any testimony, the plaintiff's counsel sought to introduce a deposition of Mr. Lucas as an exhibit. The trial court stated that it did not feel this was appropriate at that particular stage of the proceedings. Later, the plaintiff called Mr. Lucas as his first witness. During the course of Mr. Lucas' direct examination, the plaintiff's counsel asked Mr. Lucas a question regarding any consideration paid to him when the chapel business was transferred to the Trust. Not being satisfied with his response, counsel then examined him with respect to testimony that he had given in his deposition. Following this, the defendants' counsel sought to read excerpts of the same deposition touching on the same subject. The plaintiff's counsel objected "unless the entire transcript be submitted." The court overruled the objection and the defendants' counsel read pertinent excerpts from the deposition.

Because the defendants' counsel read portions of Mr. Lucas's deposition into evidence, the plaintiff argues that Rule 32.01(4) permits him to submit the *entire* deposition. The plaintiff is incorrect in his assertion. The aforementioned rule permits those portions of the deposition to be read into evidence "which ought in fairness to be considered with the part introduced." Nothing in

the rule permits a party to submit an entire deposition into evidence under the facts of the instant case. The plaintiff was certainly at liberty to read any *portion* of the deposition testimony that should "in fairness" have been considered along with that introduced by the defendants' counsel. However, the plaintiff did not attempt to pursue this method to get the appropriate parts of the depositions before the trier of fact.

In summary, we find that the plaintiff was, at no time, constrained from impeaching Mr. Lucas with relevant prior testimony or from introducing portions of Mr. Lucas' deposition testimony "which ought in fairness to be considered with" parts of that testimony read into evidence by adversary counsel. The trial court properly denied the plaintiff's motion to admit the deposition testimony of Mr. Lucas in its entirety. Accordingly, we find this issue adverse to the plaintiff.

IV.

The judgment of the trial court is affirmed. This case is remanded to the trial court for the collection of costs assessed there, pursuant to applicable law. Costs on appeal are taxed to the appellant, Gregor Nadler.

_____
CHARLES D. SUSANO, JR., JUDGE